22 Cal.Rptr.3d 686 (2004)
125 Cal.App.4th 199
In re CASSANDRA B., a Person Coming Under the Juvenile Court Law.
Los Angeles County Department of Children and Family Services, Plaintiff and Respondent,
v.
Shanna B., Defendant and Appellant.
Nos. B172767, B174722.
Court of Appeal, Second District, Division Two.
December 22, 2004.
Review Denied March 23, 2005.
*688 John L. Dodd & Associates, Tustin, and Lisa A. DiGrazia, under appointment by the Court of Appeal, for Defendant and Appellant.
Larry Cory, Assistant County Counsel, and Frank DaVanzo, Deputy County Counsel, for Plaintiff and Respondent.
No appearance on behalf of Minor.
*687 DOI TODD, J.
In the first of two consolidated appeals filed in this juvenile dependency case, Shanna (mother) challenges a predispositional restraining order issued against her pursuant to Welfare and Institutions Code section 213.5. (All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.) She contends that violent behavior is a prerequisite for the issuance of a restraining order, and because she neither engaged in nor threatened violence, the restraining order was not supported by substantial evidence, and the juvenile court acted in excess of its jurisdiction in issuing it. The second appeal challenges the court's orders at disposition maintaining the restraining order in full force and effect.
Respondent seeks dismissal of the appeals, asserting that the issues are moot because the restraining order expired on its own terms on June 7, 2004.[1] Because the issuance of the restraining order could have consequences for mother in this and future court proceedings, we find that the issues presented in mother's first appeal are not moot and warrant review on the merits. However, mother's second appeal from the juvenile court's orders maintaining the restraining order was rendered moot by the expiration of the restraining order, and that appeal will be dismissed. Moreover, because the restraining order was directly appealable, mother's challenge to the issuance of the restraining order in her second appeal from the disposition order is untimely.
We find that substantial evidence supported issuance of the restraining order and affirm the juvenile court's order.

FACTUAL AND PROCEDURAL BACKGROUND
Nine-year-old Cassandra first came to the attention of the Los Angeles County Department of Children and Family Services (the Department) on October 10, 2003, when she was removed from her mother's home following her mother's involuntary hospitalization for psychiatric evaluation. The previous day, mother had been found kneeling in the middle of the street with her hands folded, praying to the sky. Mother told the officer who found her that she was the "Virgin Mary." Mother was hospitalized for a 72-hour psychiatric evaluation and released the next day. Cassandra was placed with her stepfather, Douglas, and his live-in girlfriend, Mona.[2]
*689 Mother, who has a 10-year drug history, told the social worker she had been clean for several years, but admitted using methamphetamine on October 8 and 9, 2003. Mother also told the social worker she had begun hearing voices in October 2002. She described feeling the bed shake, seeing movements in her house, and feeling like she was being shoved. Mother believed it was possible the neighbors had inserted a camera into her television to create the voices she was hearing. When asked about her drug usage, mother attributed her behavior on October 9 to a chemical imbalance, claiming she had never had this sort of reaction before.
On October 16, 2003, the Department filed a petition pursuant to section 300 on Cassandra's behalf. The petition alleged that mother's 10-year history of substance abuse and current use of methamphetamine rendered her incapable of providing regular care for Cassandra. In addition, mother's ongoing auditory hallucinations endangered Cassandra's physical and emotional health and safety, placing her at risk of physical and emotional harm. At the detention hearing on October 16, 2003, the juvenile court ordered Cassandra detained with her stepfather. The court further ordered reunification services for mother, and granted monitored visitation for mother, with the Department given discretion to liberalize her visits.
On November 4, 2003, Cassandra's attorney requested that the court issue a temporary restraining order (TRO) against mother because "mother has been harassing the child and her caretakers." In a declaration attached to the proposed TRO, Mona stated, "Since Cassandra has been placed in our home, we have received numerous phone calls from ... Cassandra's mother. She has called our home so many times that our voice mailbox is full and we are unable to access our voice mail system. In her messages she blames us for the removal of her daughter by the courts, and has stated that she was going to pick up Cassandra from school." Mother also called Douglas, leaving numerous messages. In one message, mother threatened to "see to it that Douglas' [sic] son Matthew was taken away from him" if Cassandra were placed in a foster home.
Mona further stated that on October 23, 2003, mother went to Douglas's apartment when Cassandra was home with a babysitter, but was prevented from entering the building by a security guard. The following day, mother was seen near Cassandra's school just as it was letting out. Douglas had already picked up Cassandra, and mother followed them from the school. On both of these occasions mother was accompanied by an unknown individual.
Cassandra stated she was afraid of mother, who had told her she was going to come and get her at school. When mother called Cassandra on the phone, she would yell at her. Despite their previous willingness to monitor mother's court-ordered visits with Cassandra, Douglas and Mona stated they no longer felt comfortable doing so due to mother's behavior and threats, fearing that mother would try to take Cassandra during a monitored visit.
On November 6, 2003, the juvenile court heard argument from mother's counsel against the TRO. The attorney explained that mother had been frustrated because visitation with Cassandra had not been arranged as ordered, and mother had called the caregivers because they were to monitor her visits with Cassandra. But once advised by counsel that she should not have ongoing direct contact with the caregivers, mother agreed that despite her *690 right to visitation, she was going about it the wrong way. Counsel pointed out that there was no indication that the caregivers had any problems with mother since counsel had spoken with mother, and mother had had no contact at all with Cassandra, Douglas, Mona, or Matthew since October 28, 2003.
The court granted the TRO on November 6, 2003, requiring mother to stay 100 yards from Cassandra, Douglas, Mona, and Matthew, including their residence, place of work, school, and vehicles. Mother was further ordered not to "harass, attack, strike, threaten, assault (sexually or otherwise), hit, follow, stalk, molest, destroy personal property, disturb the peace, keep under surveillance, or block movements" of the protected parties. "Except for brief and peaceful contact as required for court ordered visitation," mother was also ordered not to contact, directly or indirectly, by telephone or messages, or e-mail the protected parties.
On November 24, 2003, Cassandra's counsel informed the court that despite the issuance of the TRO, Douglas had continued to receive telephone calls from mother on his cell phone, and mother continued to tell Cassandra she was going to take her to Northern California. Counsel reported that it was very difficult for Cassandra to hear mother's statements that she was going to take her away, and Cassandra was concerned about her mother's behavior. The court read the TRO requirements to mother, and ordered her not to discuss the case with Cassandra or make promises concerning the court order until a disposition had been entered.
The Department's November 26, 2003 jurisdiction/disposition report stated that mother left 30 messages on the social worker's phone in one day. During one conversation with the social worker, mother insisted that Cassandra had been wrongfully removed from her, and she planned "`to do something about it.'" Mother told the social worker she had decided to move to Northern California with Cassandra to start a new life. The social worker explained to mother that the juvenile court had jurisdiction over Cassandra, and mother could not take Cassandra to another city, but "mother insisted that she [was] going to Northern California with her daughter."
The report stated that when Cassandra learned that her mother wanted to take her to Northern California, she appeared to be fearful, and said, "`I don't want to go with her to Northern California. I want to stay with Doug. Do I have to go[?]'" The social worker told Cassandra she would not be going to Northern California, and Cassandra said, "`what if she comes to my school to get me[?]'" Cassandra appeared to be relieved that the school had been advised not to release Cassandra to her mother, and she would not be going with her mother. Cassandra told the social worker she did not want to live with her mother, and she did not "`want to have a lot of visits either'" because she was afraid her mother was going to kidnap her.
On December 8, 2003, the petition was sustained. Cassandra's counsel reported that despite the TRO, mother had continued to call Douglas and threaten to pick Cassandra up from school, and she had not honored the schedule the social worker had set up for calling Cassandra. Mother denied threatening anyone. She argued that the restraining order was inappropriate because there was no report from Cassandra's school that mother had been there and the caregiver declaration supporting the restraining order contained only speculation that mother might go to the school.
The court granted a restraining order against mother consistent with the TRO *691 previously issued, to expire on June 7, 2004. The court further ordered that mother was entitled to reasonable visitation with a Department-approved monitor in a neutral setting. The disposition hearing was continued to February 2, 2004.
On January 26, 2004, mother filed a notice of appeal from the court's December 8, 2003 restraining order.
At the disposition hearing on February 2, 2004, the court ordered all prior orders to remain in full force and effect, and continued the matter to March 16, 2004 for a contested disposition hearing. The Department reported that mother had moved to Northern California in early January 2004, and her occasional telephone calls with Cassandra had been appropriate. At the March 16, 2004 disposition hearing, mother's counsel argued that there had been no incidents since the issuance of the restraining order and the order should be terminated. Over mother's objection, the court ordered that the restraining order remain in effect until it expired, but allowed mother to have reasonable telephone contact and monitored visits with Cassandra.
Mother's second appeal from the court's December 8, 2003, February 2, 2004 and March 16, 2004 orders followed.
The restraining order expired by its own terms on June 7, 2004.[3]

DISCUSSION

1. The Restraining Order Is Directly Appealable.
The Department contends that an order issuing a restraining order is not directly appealable, and requests that we treat the appeal as a petition for writ of mandate. Mother argues that the order is directly appealable because the requirement in Welfare and Institutions Code section 213.5, subdivision (b) that the juvenile court may issue an ex parte restraining order upon "application in the manner provided by Section 527 of the Code of Civil Procedure" allows an appeal in accordance with the Code of Civil Procedure. But Code of Civil Procedure section 527 makes no reference to appeal rights.[4]
"[T]he scope of a party's right to appeal is completely a creature of statute." (In re Daniel K. (1998) 61 Cal.App.4th 661, 666, 71 Cal.Rptr.2d 764.) In exercising its complete control over the right to appeal, the Legislature "`may restrict, change, withhold or even abolish that right.'" (Melinda K. v. Superior Court (2004) 116 Cal.App.4th 1147, 1152, 11 Cal. *692 Rptr.3d 129.) The right to appeal in juvenile dependency cases is governed by section 395, which provides in pertinent part: "A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment."
Courts have held that Welfare and Institutions Code section 395 "should be interpreted to be in harmony, to the extent possible, with basic appellate principles such as the one final judgment rule," codified in Code of Civil Procedure section 904.1. (In re Debra M. (1987) 189 Cal. App.3d 1032, 1036-1037, 234 Cal.Rptr. 739; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 43, p. 67.) Consistent with this principle, there is general agreement that "`[i]n juvenile dependency matters, all orders starting chronologically with the dispositional order are, [with the exception of an order setting a section 366.26 hearing], appealable judgments.' [Citation.]" (In re Daniel K., supra, 61 Cal.App.4th at p. 668, 71 Cal.Rptr.2d 764; Melinda K. v. Superior Court, supra, 116 Cal.App.4th 1147, 1153, 11 Cal.Rptr.3d 129.) In In re Natasha A. (1996) 42 Cal.App.4th 28, 39, 49 Cal.Rptr.2d 332, the court declared that the "basic appellate principles codified in Code of Civil Procedure sections 901 through 923 apply in juvenile dependency proceedings, at least to the extent not inconsistent therewith. (See Code Civ. Proc., § 901; In re Brittany S. (1993) 17 Cal.App.4th 1399, 1404, 22 Cal.Rptr.2d 50 [Code Civ. Proc., § 906]; In re Andrew M. (1977) 74 Cal.App.3d 295, 301, 141 Cal. Rptr. 350 [Code Civ. Proc., § 914].)" While appeal rights with regard to injunctions are not addressed under juvenile dependency law, Code of Civil Procedure section 904.1, subdivision (a)(6) specifically allows a direct appeal from an order granting an injunction.
Under these principles, we hold that a restraining order issued in a juvenile dependency proceeding is directly appealable to the same extent as a restraining order granted in a civil action. (Code Civ. Proc., § 904.1, subd. (a)(6); see Brydon v. City of Hermosa Beach (1928) 93 Cal.App. 615, 620, 270 P. 255 ["the intent of the statute is that all orders granting or refusing injunctions, whether temporary or permanent or provisional pending appeal, shall be appealable"].) Accordingly, mother's challenge to the restraining order in this case is subject to review on direct appeal from the order granting the restraining order.
Our conclusion that the restraining order was directly appealable means that mother's challenge to the juvenile court's issuance of the restraining order in her second appeal, filed on April 19, 2004, is untimely. "`An appeal from the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an appeal has passed.' [Citations.]" (In re Daniel K., supra, 61 Cal.App.4th at p. 667, 71 Cal.Rptr.2d 764.) The notice of appeal must be filed within 60 days after the juvenile court makes an appealable order. (Cal. Rules of Court, rules 39(b), 1435(f).) Here, while mother's first appeal from the juvenile court's December 8, 2003 issuance of the restraining order, filed on January 26, 2004, was within the statutory time limit, her second appeal was not.

2. Although the Restraining Order Has Already Expired, Mother's First Appeal Should Not Be Dismissed as Moot.
The Department has renewed its request that mother's appeals be dismissed on the ground that the expiration of the restraining order on June 7, 2004 has rendered both appeals moot. In this regard, *693 the Department contends that dismissal is required where, as here, subsequent events have rendered the controversy moot and there remains no effectual relief to grant. (Consol. Etc. Corp. v. United A. Etc. (1946) 27 Cal.2d 859, 862-863, 167 P.2d 725; Finnie v. Town of Tiburon (1988) 199 Cal.App.3d 1, 10, 244 Cal.Rptr. 581.) Mother counters that the question of the propriety of the restraining order is not moot because its issuance in the first instance could have consequences for mother in this and future court proceedings. We agree with mother, and conclude that the issuance of the restraining order in this case warrants review on the merits. (See Haywood v. Superior Court (2000) 77 Cal.App.4th 949, 953, 92 Cal.Rptr.2d 182 [appeal is "not mooted by subsequent events when these events leave a material question affecting the parties unresolved"].)
Before a hearing on the issuance of an order pursuant to Welfare and Institutions Code section 213.5, subdivision (a), the juvenile court is required to conduct a search as described in Family Code section 6306, subdivision (a). Family Code section 6306, subdivision (a) in turn provides: "Prior to a hearing on the issuance or denial of an order under this part, the court shall ensure that a search is or has been conducted to determine if the subject of the proposed order ... has any prior restraining order." Under Welfare and Institutions Code section 213.5, subdivision (k)(2), the juvenile court must consider the existence of the prior restraining order in determining whether to issue another one against the same party: "Prior to deciding whether to issue an order under this part, the court shall consider the following information obtained pursuant to a search conducted under paragraph (1): ... any prior restraining order; and any violation of a prior restraining order."
The existence of the prior restraining order must be considered by the juvenile court in any proceeding to issue another restraining order against mother. This consequence of the restraining order leaves unresolved a material question affecting the parties, and mother's challenge to the issuance of the restraining order is therefore not moot.[5]
Mother's appeal from the juvenile court's orders maintaining the restraining order is another matter, however. Because the restraining order has already expired, the orders maintaining it carry no consequences for mother apart from those arising from the issuance of the restraining order in the first instance. Thus, only *694 mother's challenge to the issuance of the restraining order presents any justiciable issue on appeal; the expiration of the restraining order has rendered mother's second appeal moot and there remains no effectual relief to grant with respect to the juvenile court's orders maintaining the restraining order. Mother's second appeal will be dismissed.

3. The Juvenile Court Did Not Err in Issuing the Restraining Order Against Mother.
Mother contends that a restraining order may not be issued pursuant to section 213.5 if neither violent behavior nor threats of violence have been established. She further contends that her behavior toward her daughter did not constitute "molesting" or "stalking," and there was no substantial evidence to support issuance of the restraining order. We disagree with these contentions.
The issues of statutory construction presented here are legal questions that we review de novo. (Williams v. Superior Court (2001) 92 Cal.App.4th 612, 620, 111 Cal.Rptr.2d 918.) As for mother's challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the respondent, and indulge all legitimate and reasonable inferences to uphold the juvenile court's determination. If there is substantial evidence supporting the order, the court's issuance of the restraining order may not be disturbed. (In re Misako R. (1991) 2 Cal.App.4th 538, 545, 3 Cal. Rptr.2d 217.)
Section 213.5, subdivision (a) provides that, once a juvenile dependency petition has been filed, the juvenile court may issue a temporary restraining order protecting the dependent child and any caregivers of the child. The juvenile court may issue orders "(1) enjoining any person from molesting, attacking, striking, sexually assaulting, stalking, or battering the child or any other child in the household; (2) excluding any person from the dwelling of the person who has care, custody, and control of the child; and (3) enjoining any person from behavior, including contacting, threatening, or disturbing the peace of the child, that the court determines is necessary to effectuate orders under paragraph (1) or (2). A court ... may simultaneously issue an ex parte order enjoining any person from contacting, threatening, molesting, attacking, striking, sexually assaulting, stalking, battering, or disturbing the peace of any parent, legal guardian, or current caretaker" of the child.
Mother contends that because no violent behavior was established, her conduct did not fall within the parameters of subparts (1), (2) or (3) of section 213.5, subdivision (a), and the juvenile court therefore had no authority to issue a restraining order against her.[6] She argues that the plain meaning of the statute includes the requirement of violent behavior, pointing to the statute's references to "molesting, attacking, striking, sexually assaulting, stalking, [or] battering." According to mother, since the element of violence is the common thread in all of the conduct that the juvenile court is permitted to enjoin under the plain language of section 213.5, subdivision (a)(1), it stands to reason that violent behavior or the threat of violence is a prerequisite to the imposition of a restraining order under the statute.
But not all of the conduct listed in section 213.5, subdivision (a) necessarily involves violent behavior, and we decline to *695 read this element into the plain language of the statute. (See Maricela C. v. Superior Court (1998) 66 Cal.App.4th 1138, 1143-1144, 78 Cal.Rptr.2d 488 [a court should give the words of a statute their ordinary, everyday meaning, and neither interpretation nor construction is required where the language is without ambiguity, doubt, or uncertainty].) Specifically, section 213.5 includes "molesting" or "stalking" in the conduct the juvenile court may enjoin, neither of which necessarily involves violent behavior or the threat of violence. Accordingly, we reject mother's assertion that violence must be present for the imposition of a restraining order under the plain meaning of section 213.5, subdivision (a)(1).
Mother further contends that because her behavior towards her daughter did not constitute "molesting" or "stalking," there was no substantial evidence to support issuance of the restraining order. Citing People v. Lopez, she asserts that the term "molest" in section 213.5 refers to sexual abuse, which was not proven here. (People v. Lopez (1998) 19 Cal.4th 282, 290, 79 Cal.Rptr.2d 195, 965 P.2d 713 [in the context of Pen.Code, § 647.6, subd. (a), "`Annoy' and `molest' ordinarily relate to offenses against children, with a connotation of abnormal sexual motivation"].)
But as the Supreme Court explained in Lopez, "molest" does not refer exclusively to sexual misconduct: "We have observed that the words `annoy' and `molest' in former [Penal Code] section 647a (now section 647.6, subdivision (a)) are synonymous and generally refer to conduct designed to disturb, irritate, offend, injure, or at least tend to injure, another person. (People v. Carskaddon [ (1957) ] 49 Cal.2d [423,] 426 [318 P.2d 4]; see People v. Pallares (1952) 112 Cal.App.2d Supp. 895, 901 [246 P.2d 173].) As Pallares observes, `Annoy means to disturb or irritate, especially by continued or repeated acts [citations]; "to weary or trouble; to irk; to offend; to disturb or irritate, esp. by continued or repeated acts; to vex; to molest ... harm; injure." (Webster's New Internat. Dict.2d ed.) [¶] The same dictionary defines "molest" as, "to interfere with or meddle with unwarrantably so as to injure or disturb." Molest is, in general, a synonym for annoy. The term "molestation" always conveys the idea of some injustice or injury. Molest is also defined as meaning to trouble, disturb, annoy or vex. [Citation.] To molest means to interfere with so as to injure or disturb; molestation is a wilful injury inflicted upon another by interference with the user of rights as to person or property. [Citation.] Annoyance or molestation signifies something that works hurt, inconvenience or damage. [Citation.]' (People v. Pallares, supra, 112 Cal.App.2d at p. Supp. 901 [246 P.2d 173].)" (People v. Lopez, supra, 19 Cal.4th at pp. 289-290, 79 Cal.Rptr.2d 195, 965 P.2d 713.)
In this case, there was ample evidence before the juvenile court that mother was "molesting" Cassandra under the foregoing definition. Her conduct in attempting to gain entry to the home of Cassandra's caregivers without their knowledge, appearing at Cassandra's school and then following behind the caregiver's car after Cassandra was picked up from school, together with her threats to remove Cassandra from her caregivers' home were indeed troubling, disturbing, annoying, and vexatious to Cassandra and her caregivers. This conduct certainly meets the definition of "molest." Moreover, on both occasions when mother sought unauthorized access to Cassandra, she was accompanied by an unknown person, giving rise to a reasonable suspicion that she had brought someone to help carry out her threat to remove Cassandra from her caregivers. On the strength of this evidence, the juvenile court did not err in issuing the restraining *696 order against mother pursuant to section 213.5, subdivision (a)(1).[7]

DISPOSITION
The order is affirmed. The appeal filed April 19, 2004 is dismissed.
We concur: BOREN, P.J., and NOTT, J.
NOTES
[1] On August 9, 2004, we denied respondent's motion to dismiss both appeals on the ground of mootness.
[2] Mother and Douglas are divorced. Douglas has sole legal and physical custody of Cassandra's half brother, Matthew, who is also mother's child. Mother has visitation rights with Matthew pursuant to a marital settlement agreement.
[3] We granted mother's request for judicial notice of the June 7, 2004 minute order, showing that the juvenile court did not renew or extend the restraining order against mother.
[4] Welfare and Institutions Code section 213.5, subdivision (b) only requires that application for an ex parte restraining order conform to the requirements of Code of Civil Procedure section 527. These requirements are set forth in Code of Civil Procedure section 527, subdivision (c). Subdivision (d) of section 527 goes on to set forth the procedures to be followed in the event a temporary restraining order is granted without notice as specified in subdivision (c).

Welfare and Institutions Code section 213.5, subdivision (c) contains its own procedures to be followed, in the event a temporary restraining order is granted without notice, that are different from those set forth in subdivision (d) of Code of Civil Procedure section 527. It therefore stands to reason that the reference to Code of Civil Procedure section 527 in section 213.5 of the Welfare and Institutions Code is limited to the application procedures for an ex parte restraining order, and does not open the door to incorporation of other provisions of the Code of Civil Procedure which are not specifically mentioned.
[5] Welfare and Institutions Code section 213.5, subdivision (j) requires the juvenile court to transmit to the Department of Justice in accordance with Family Code section 6380, subdivision (b), "[i]nformation on any juvenile court restraining order related to domestic violence issued by a court pursuant to this section." (Welf. & Inst. Code, § 213.5, subd. (j).) Family Code section 6380, subdivision (b) in turn provides in pertinent part: "Upon ... the issuance of a juvenile court restraining order related to domestic violence pursuant to Section 213.5, ... the Department of Justice shall be immediately notified of the contents of the order." Mother contends that the issuance of the restraining order will become part of her "criminal history," and that whether the restraining order issued against her is "related to domestic violence" is relevant to the issues presented on appeal. The Department, on the other hand, asserts that under Family Code section 6306, subdivision (b)(2), only actual convictions may be considered by the court in issuing a protective order, and information that does not constitute a conviction "shall be destroyed and shall not become part of the public file in this or any other civil proceeding." Because we conclude that the existence of the restraining order may have consequences for mother in these dependency proceedings unrelated to her criminal history, we need not decide the issue of the effect of the restraining order, if any, on mother's criminal history.
[6] The court made no order under subpart (2) excluding any person from the caregiver's dwelling. Accordingly, mother's argument that the requirements of section 213.5, subdivision (e) have not been met is irrelevant to any issue before us.
[7] Mother also argues that her behavior also did not fall within the definition of "stalking" as grounds for a restraining order under section 213.5, subdivision (a)(1). In light of our conclusion that the restraining order was supported by evidence that mother molested Cassandra, we need not reach this contention.