Filed 12/6/13  In re Michael C. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re MICHAEL C. et al., Persons Coming Under the Juvenile Court Law. | D064180 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. SJ12433C-D) |
| v. | |
| SID C., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed as modified.

Neil R. Trop, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Sid C. appeals from a restraining order issued under Welfare and Institutions Code section 213.5[1] in the juvenile dependency case of his minor sons, Michael C. and Brandon C. Sid contends that the court erroneously admitted hearsay statements contained in a social services report and that substantial evidence does not support the court's restraining order. Sid further contends that the restraining order is impermissibly vague because the court did not specify the distance that Sid must maintain between himself and a protected person. We conclude that even if Sid is correct that the alleged hearsay statements should have been excluded, there is still substantial evidence to support the court's restraining order. However, we modify the order to include the omitted distance. As so modified, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

On February 16, 2012, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under section 300, subdivision (b), on behalf of 14-year-old Michael and 12-year-old Brandon. Brothers Michael and Brandon lived with their father, Sid. The family came to the Agency's attention following Sid's arrest on drug and weapons charges. The Agency alleged that law enforcement officers had found a saleable amount of drugs and a blowtorch in Sid's unlocked bedroom, placing Michael and Brandon at a substantial risk of serious harm.

Both Michael and Brandon tested presumptively positive for drugs, including methamphetamine, which is consistent with a large amount of drug residue in their home.

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise noted.

Michael reported having witnessed physical confrontations between Sid and unknown individuals, including seeing Sid brandish a firearm when Sid's safety was threatened. At the time of his arrest, Sid had a loaded revolver in his vehicle. However, Michael and Brandon otherwise appeared clean, healthy, and well-groomed. In interviews with the Agency, both Michael and Brandon denied any abuse or neglect.

Sid and the boys' mother, Brenda C., were divorced in 2001. At that time, they agreed that Sid would be the primary caregiver for Michael and Brandon. Brenda later had two more children from subsequent relationships. Both of those children were involved in separate dependency proceedings. At the time of the petitions, Brenda had not seen Michael or Brandon for several months.

At the pretrial status conference, both Sid and Brenda submitted on the Agency's allegations. The court sustained the petitions, declared the boys dependents of the court, removed them from Sid's custody, and ordered reunification services for both Sid and Brenda. Michael and Brandon were placed in the foster home of Gina B.

Sid participated in supervised visitation with the boys, but he failed to make substantive progress in reunification services. Sid admitted to the Agency that he was a heroin addict. He tested positive for various drugs, including opiates and methamphetamines, at least twice in the months following the pretrial status conference. Sid was also arrested again on felony drug and weapons charges and incarcerated for several months while the dependency proceedings were pending. The Agency concluded that Sid "has a serious addiction and is in need of intense treatment and is not capable of parenting at this time."

3

Approximately three weeks before the court's 12-month review hearing, Sid was released from jail. Prior to his release, Brenda expressed concern that Sid would be looking for her, that he might be angry, and that he could be dangerous. On the day of Sid's release, Brenda left a message with the Agency stating, "Sid is out today. I know he is looking for the boys. Someone let me know. I am afraid." Gina, the boys' foster mother, reported that Brenda told her that Sid had been to Brenda's home that day, "hunting for her," and had banged on Brenda's door. Brenda confirmed to the Agency that Sid had come to see her and that she was "scared." Brenda did not see Sid, but her sister did. Brenda's sister reported that Sid looked "anxious or nervous" and "not right."

Sid went to see both Michael and Brandon as well. He met each boy separately on their way home from school. Brandon told the Agency that Sid approached him and asked him to get into Sid's vehicle. Brandon refused, but Sid told Brandon that he would come again. Brandon said that he thought Sid was "high" at the time of their encounter. In the interview, Brandon appeared very scared. Brandon was afraid that Sid would hurt Brenda or his foster mother. Brandon had seen Sid in fights before and said that Sid had threatened to kill people in the past.

Michael reported a similar encounter with Sid. Sid approached Michael in his car while Michael was walking and called Michael over to the driver's side window. Michael said that he "kept [his] distance. I knew he was gonna pull something." According to Michael, Sid "stunk like alcohol." Sid asked Michael about school and his foster home placement, and then said, "Don't go. I don't care what happens to me." Michael was "mad" about the incident, and he was worried that Sid would hurt him. Specifically,

4

Michael told the Agency that he was worried that Sid would break in, burn his house down, or have a gun. Michael had seen Sid be violent, and he told a police officer that the officer had better find Sid and "put him away."

Gina, the boys' foster mother, had the first interaction with the boys after their separate encounters with their father. She told the Agency that Brandon was "completely out of sorts" and looked ill. Michael seemed very panicked. In response to Gina's questions, both boys admitted having seen their father. Michael told Gina that Sid had said, "You are not my sons, worthless, and would kill them and all of us."

Two days later, a roommate discovered Sid unconscious on the floor of his home. Paramedics arrived and found him unresponsive. They transported Sid to a hospital, where he was admitted for a possible drug overdose. Sid tested positive for methamphetamines as well as opiates. The hospital reported that Sid was "extremely agitated, restless, and signed papers and left against medical advice."

At the 12-month review hearing, both Sid and Brenda submitted on the Agency's recommendation that the court terminate reunification services for each of them. The court agreed with the Agency and terminated services.

At that same hearing, the boys' counsel requested a temporary restraining order against Sid based on his conduct and statements towards the boys upon his release from custody. The court granted the request, finding "a showing of cause to issue a temporary

5

restraining order based on the addendum [report] dated [May] 22."[2]  During the hearing,

Gina and her partner, K.K., requested that they be included in the order together with

their own children, Shayla K. and Luke K.  K.K. reported that Sid had driven by their

home.  The court issued the temporary restraining order as requested.  The order named

Michael and Brandon, as well as Gina, K.K., Shayla, and Luke, as protected persons.

The order required Sid, among other things, to remain at least 100 yards from the

protected individuals and their home, schools, and vehicles.  The court set a hearing to

consider a three-year restraining order.

At the next hearing, the Agency offered in evidence two reports prepared by the

social worker assigned to Michael and Brandon's case.  Sid's counsel objected to one of

the two reports as follows:

> "I would object to the addendum coming in, the [May] 22[,] 2013
> addendum report.
>
> "My objection is that unlike the regular review hearings, unlike
> the jurisdiction and disposition hearing, there isn't a specific code
> section that allows social worker reports or social studies to be
> admitted into evidence.
>
> "This is a different type of hearing that this court usually deals
> with.
>
> "This is a request for a protective order pursuant to the Family
> Code.
>
> "So for those reasons, for the record, I would ask that the [May]
> 22[,] 2013 addendum report not be admitted into evidence."

---

2  The Agency's May 22 addendum report contained summaries of the boys'
statements to the Agency, as well as Gina's statements to the Agency recounting what the
boys had told her that Sid had said to them.

The court overruled Sid's objection and found the report admissible, in part. The court stated, "What I am going to do is admit the addendum into evidence to the extent that it contains the statements of the boys. I don't believe that necessarily the boys should be forced to get on the stand and reiterate this information, and I'm looking at [Evidence Code, section] 352 in that regard." The court noted that Michael and Brandon were present in court and available for cross-examination about their statements. The court also offered the parties an opportunity to request a continuance to call witnesses in light of the court's ruling. Sid did not request a continuance.

The Agency offered brief stipulated testimony from Michael and Brandon. Michael would testify that Sid was waiting for him on his path home from school and that Sid asked Michael to go with him. Similarly, Brandon would testify that he was approached by his father after getting off his school bus. The court accepted the Agency's offer of proof without objection by any party.

Sid testified in person at the hearing. He admitted having seen both Michael and Brandon on the day he was released from jail. He said he had not seen them in over six months and wanted to make sure that they were doing well. He denied raising his voice to either boy, using any profanity, or being under the influence of drugs or alcohol. Sid specifically denied making the threat to Michael recited in the Agency's May 22 addendum report, that "You are not my sons, worthless, and would kill them and all of us." Sid testified that he told the boys that they would always be his sons, that they were always welcome back with him or his parents, and that he did not care what happened to

7

him.  He wanted them to be happy.  Sid acknowledged that both Michael and Brandon seemed nervous while he was speaking with them.

The court granted the request for a three-year restraining order.  The order again named Michael and Brandon, as well as Gina, K.K., Shayla, and Luke, as protected persons.  The court instructed Sid on the terms of the order, including that he must "stay 100 yards away from [the protected individuals], from their home or their job or work place, their vehicles, their school, and any other care or child care."  However, the written order signed by the court omits this distance.  That order, on Judicial Council form JV-250 (Restraining Order—Juvenile), states that Sid "**must stay away** at least *(specify)* yards from[]" the protected individuals and their home, schools, and vehicles.  The record does not reflect that this omission was brought to the attention of the juvenile court.  Sid appeals.

## DISCUSSION

## I

## A

Section 213.5, subdivision (a) authorizes the juvenile court to issue a restraining order "enjoining any person from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, . . . contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of" any dependent child, any other children in the dependent child's household, or any current caretaker of the dependent child.

8

"Issuance of a restraining order under section 213.5 does not require 'evidence that the restrained person has previously molested, attacked, struck, sexually assaulted, stalked, or battered the child.' [Citation.] Nor does it require evidence of a reasonable apprehension of future abuse." (*In re C.Q.* (2013) 219 Cal.App.4th 355, 363.) Section 213.5 has been analogized to Family Code section 6340, which governs restraining orders under the Domestic Violence Prevention Act (DVPA). (See *In re C.Q.,* at pp. 363-364; *In re B.S.* (2009) 172 Cal.App.4th 183, 194.) That statute "permits the issuance of a protective order under the [DVPA] in the first instance, if 'failure to make [the order] may jeopardize the safety of the petitioner . . . .' (Fam. Code, § 6340, subd. (a); see also Fam. Code, § 6320.)" (*In re B.S.,* at p. 194.)

The parties agree on the standard of review that applies here. In reviewing the sufficiency of the evidence supporting the court's restraining order, "we view the evidence in a light most favorable to the respondent, and indulge all legitimate and reasonable inferences to uphold the juvenile court's determination. If there is substantial evidence supporting the order, the court's issuance of the restraining order may not be disturbed." (*In re Cassandra B.* (2004) 125 Cal.App.4th 199, 210-211.)

B

Sid contends that the evidence does not support the court's restraining order because in determining whether to issue the order, the court improperly considered hearsay statements contained in the Agency's May 22 addendum report. Sid acknowledges that social service reports like the May 22 addendum report are generally admissible in dependency proceedings. (See, e.g., *In re Keyonie R.* (1996) 42

9

Cal.App.4th 1569, 1572 ["The language of § 281 broadly authorizes the trial court to receive and consider social service reports in determining 'any matter involving the custody, status, or welfare of a minor,' " italics omitted.].) However, Sid argues that multiple layers of hearsay, even if contained in a social services report, are not admissible. (See Evid. Code, § 1200, subd. (b).) Specifically, Sid argues that the boys' statements to their foster mother regarding their encounters with Sid following his release from custody, including Michael's statement recounting the threat made by his father ("You are not my sons, worthless, and would kill them and all of us"), are inadmissible hearsay. Without those statements, Sid argues, the facts do not support a finding that "failure to make [the order] may jeopardize the safety of" the protected individuals. (See Fam. Code, § 6340, subd. (a); *In re B.S., supra*, 172 Cal.App.4th at p. 194.)

The Agency counters that Sid has forfeited any claim of error resulting from the admission of the May 22 addendum report by failing to make a timely and specific objection to that report in the juvenile court. The Agency further contends that substantial evidence supports the restraining order, even if the hearsay statements are excluded.

As a preliminary matter, we do not agree with the Agency that Sid forfeited the right to argue on appeal that the May 22 addendum report was erroneously admitted. "[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) Sid's counsel objected on the record to the addendum report prior to its admission. The Agency maintains that Sid's objection was insufficiently specific. We disagree.

10

Although Sid's counsel did not use the word "hearsay," it is apparent from the record that the court understood his objection to be on hearsay grounds. For example, the court specifically referenced the statements of Michael and Brandon that were contained in the addendum report in considering Sid's objection. The court also noted that Michael and Brandon were present at the hearing and were available for cross-examination regarding their statements. We conclude that Sid's objection was sufficient to preserve this issue for appeal.

The Agency relies exclusively on forfeiture and does not respond to the merits of Sid's hearsay objection. However, we need not reach the merits of Sid's objection because we conclude that even if the hearsay statements are excluded, there is substantial evidence to support the issuance of the restraining order. Sid acknowledged that he approached both boys, unannounced, as they made their way home from school, in violation of the court's supervised visitation orders. The Agency's interviews with the boys show that their encounters with Sid left them frightened and upset. Brandon was "very worried about his safety" and was also afraid that Sid would hurt his foster mother. Michael said that he believed he was at risk of his father hurting him, and also feared that Sid might "break in, burn the house down, or have a gun." More than a week after the encounter, both boys were still worried about their safety. Their foster mother also reported that her family was scared. Sid had a history of violent encounters and an apparently untreated heroin addiction. Sid owned firearms in the past, and Michael witnessed him brandishing a handgun on an occasion when he felt his safety was threatened. Sid's ex-wife, Brenda, anticipated trouble before Sid's encounters with the

11

boys and reported being afraid of Sid herself. Based on this evidence, the juvenile court could reasonably find that failure to issue a protective order might jeopardize the physical safety of Brandon and Michael, as well as their foster mother and her family. (*In re B.S.*, *supra*, 172 Cal.App.4th at p. 194.)

Sid's assertion that he "did not have a history of acting in a violent or threatening manner toward his sons (or any of the other people that the restraining order specified as protected parties)" is contradicted by his sons' reactions to their encounters with Sid after his release from jail. Both boys felt scared and threatened after the encounters, for themselves and for their foster family. Both boys interpreted Sid's words and actions as credible threats of violence.[3]

Similarly, Sid's contention that he "had not engaged in any of the acts which may be prohibited under section 213.5" is unsupported by the record. Under section 213.5, "molesting" is one activity that may be enjoined. " '[M]olesting' " need not be sexual; it may include activity that is troubling, disturbing, annoying or vexing. (*In re Cassandra B., supra*, 125 Cal.App.4th at p. 212.) While not every troubling or disturbing activity may rise to the level of molestation, the facts show that Brandon and Michael were both profoundly troubled and disturbed as a result of their encounters with Sid. The record therefore supports a finding that Sid engaged in activity that could be enjoined under section 213.5.

---

[3] Sid's assertion is further undermined by the substantiated allegation that Sid had slapped Michael across the face several years earlier.

12

Sid bears the burden of demonstrating the absence of substantial evidence to support the court's order. He has not done so. The court's decision to issue the restraining order will therefore not be disturbed. (*In re Cassandra B.*, *supra*, 125 Cal.App.4th at pp. 210-211.)

## II

Sid argues that the "stay away" provision of the restraining order should be struck because it fails to include the distance that Sid must maintain between himself and any protected person or location. The Agency acknowledges that the distance was omitted from the restraining order, but it contends that any error is "harmless" because the court orally admonished Sid to stay 100 yards away during the hearing on the restraining order.

We do not agree with the Agency that the omission is "harmless." "It has long been settled that the action of the court must be made a matter of record in order to avoid any uncertainty as to what its action has been." (*In re Marcus* (2006) 138 Cal.App.4th 1009, 1015, citing *Von Schmidt v. Widber* (1893) 99 Cal. 511, 515.) "To hold a person in constructive contempt for wilful disobedience of a court order, the order must be in writing or must be entered in the court's minutes. It must also be definitive; otherwise, it lacks the certainty required to punish through a proceeding which in a broad sense is regarded as criminal or quasi-criminal [citation]." (*Ketscher v. Superior Court* (1970) 9 Cal.App.3d 601, 605.)

It is apparent, however, that the omission of any distance from the "stay away" provision of the restraining order was inadvertent and clerical in nature. During the hearing on the restraining order, the court stated that it would "grant the permanent

13

restraining order" and orally ordered Sid to "stay 100 yards away from [the protected individuals], from their home or their job or work place, their vehicles, their school, and any other care or child care."  The court's statements demonstrate that the court intended to order Sid to stay 100 yards away from the protected persons and locations in its subsequent written order.  Without that distance, the stay away order is plainly incomplete.

Contrary to Sid's contention, however, we need not strike the defective provision. We may instead modify the order to conform to the oral instructions of the juvenile court. (Code Civ. Proc., § 43; see also *People v. Mitchell* (2001) 26 Cal.4th 181, 185.)  "The simplest situation calling for modification instead of reversal is where the judgment contains an obvious clerical error or other defect resulting from inadvertence."  (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 859, p. 922.)  Here, the restraining order contains an obvious clerical error.  We will therefore modify the order to reflect the distance of 100 yards, as the juvenile court clearly intended.

DISPOSITION

The juvenile court's June 13, 2013 restraining order is modified to include the omitted distance, 100 yards, in the stay away provision in paragraph 8.b. of the order. As modified, the order is affirmed. The juvenile court shall prepare a modified and corrected order.

AARON, J.

WE CONCUR:


BENKE, Acting P. J.


McDONALD, J.

15