Filed 9/15/14  In re Kimberly V. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re KIMBERLY V., a Person Coming Under the Juvenile Court Law. | B251283 |
| | (Los Angeles County Super. Ct. No. CK95308) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. KEITH V., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Timothy Saito, Judge.  Reversed in part and affirmed in part.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

_____

## SUMMARY

Keith V. ("V. Father") appeals from the juvenile court's mutual stay away and no contact order as to him and Jimmy M. ("M. Father"). The juvenile court ordered V. Father and M. Father to remain 100 yards from each other and the other's workplace, home, school, vehicles.

On appeal, V. Father argues that the juvenile court erred by not providing him notice that he might be subject to a stay away order and not allowing him the opportunity to present evidence in response to the mutual stay away order. In addition, V. Father challenges the sufficiency of the evidence in support of the order against him. Last, V. Father argues that the juvenile court should have issued a restraining order against M. Father.

The Department of Children and Family Services ("DCFS") filed a letter brief taking no position on V. Father's appeal. M. Father did not appeal and no party has filed a responsive brief.

We reverse in part and affirm in part.

## BACKGROUND

V. Father is the father of Kimberly V. and M. Father is the father of Kimberly's half siblings, Destinee and Jonathan M.

On September 4, 2012, DCFS filed a petition under section 300 of the Welfare and Institutions Code on behalf of Kimberly, Destinee and Jonathan based on allegations of domestic violence between the mother, Reyna C. ("Mother"), and M. Father. According to the September 4, 2012 Detention Report, Mother and M. Father were involved in a domestic dispute on August 29, 2012, in which Mother grabbed M. Father's shirt, ripping the shirt and scratching M. Father's neck; M. Father pushed Mother, causing her to fall down, and jumped on top of her and held her down; Mother hit M. Father; and M. Father punched Mother on her side. Kimberly became frightened and intervened by getting between Mother and M. Father and contacted law enforcement. Law enforcement was unable to determine who was the aggressor.

2

The Detention Report indicated that V. Father's whereabouts were unknown. Mother stated that V. Father was never involved with Kimberly and when Mother and V. Father divorced, V. Father "expressed he did not want anything to do with child Kimberly." Kimberly, who was 16 years old at the time of the Detention Report, stated that she "has never had any contact with [V. Father], and does not know how to contact him." At the September 4, 2012 detention hearing, the juvenile court found V. Father to be the presumed father of Kimberly.

On a Last Minute Information For The Court form filed on October 25, 2012, DCFS indicated that V. Father contacted DCFS investigator on October 22, 2012, stating that he and Mother had a history of domestic violence, that he had a history of alcohol abuse, that the last time he saw Kimberly was when she was two years old, that he knows he should have made more of an effort to try to find Kimberly, and that he would like to have contact with Kimberly. V. Father also stated that he tried to call Mother in one instance and M. Father got on the phone and stated that he did V. Father's job in caring for Kimberly. V. Father thanked M. Father. V. Father indicated that he wanted to try to establish a relationship with Kimberly.

V. Father appeared at the jurisdiction hearing on October 29, 2012, and was granted monitored visits with Kimberly three times a week. V. Father, however, apparently had no visits with Kimberly over the next eight months as Kimberly refused to have any contact with him.

On August 7, 2013, V. Father filed an ex parte request for a temporary restraining order ("TRO") against M. Father, which was granted. The request was based on V. Father's declaration describing a confrontation that occurred the morning before, on August 6, 2013, in the third floor lobby of Edelman's Children's Court.

According to V. Father's declaration, he was seated reading a book when M. Father approached and stated, "'some people don't need to fucking be here'" while staring at V. Father. V. Father stated he did not respond because he feared being physically assaulted by M. Father. M. Father walked away and then returned 10 seconds

3

later and said, "'what are you doing here? You're wasting your fucking time!'" V. Father asked M. Father to stop and to be a good example for his child.

Approximately 45 minutes later, an attorney walked out and called out the Minors' last names and V. Father stood up and walked towards the attorney, as did M. Father and Mother. M. Father saw V. Father approaching and stuck out his arm and yelled, "'no one called you! Get out of here!'" and then yelled, "'go have a seat. I told you you're wasting your time!'" V. Father was fearful that M. Father would physically assault him and walked away and sat down.

Approximately 15 minutes later, M. Father began pacing back and forth in front of where V. Father was sitting and "staring me down." V. Father characterized M. Father as appearing "menacing with the intent to intimate [*sic*] and harass me." After 10 minutes of M. Father pacing, V. Father became fearful that M. Father would physically assault him so V. Father held onto his cellular telephone in case he needed to call 911. When M. Father saw the phone, he approached V. Father and kneeled within eight inches of V. Father's face and stated in a menacing demeanor, "'you better not record me.'" V. Father was fearful and yelled at M. Father to "'get away from me'" and "'not to come next to me or talk to me." M. Father grinned and stood up, walking away slowly while continuing to stare menacingly at V. Father. M. Father resumed pacing about 12 to 15 feet away from where V. Father was sitting and "continued his intimation [*sic*] and harassment techniques" until the case was called to appear before the juvenile judge.

At the September 3, 2013 hearing on V. Father's request for a permanent restraining order against M. Father, both V. Father and M. Father and their counsel were present.[1] Mother was not present. V. Father submitted based on his August 7, 2013 declaration requesting the TRO. Counsel for V. Father stated that she had no additional evidence as V. Father had no further contact with M. Father since the August 7, 2013 TRO, and V. Father did not recall any prior threats. Counsel for M. Father opposed the request and argued that the conduct described in V. Father's declaration did not rise to the

---

[1] Counsel for Minors and DCFS were present. Counsel for Mother waived his appearance.

level that would support a restraining order, noting that the present hearing was only the third time M. Father and V. Father had been in the same room and only saw each other for court hearings.[2] Counsel for M. Father then gave M. Father's version of what happened, stating that M. Father had stated that Mother would support his version of events because she was with M. Father the entire time. According to M. Father's counsel, M. Father stated that the only contact he had with V. Father was when M. Father attempted to deliver documents to his counsel and when V. Father pulled out his phone and pointed the camera at and followed M. Father back and forth and M. Father told V. Father "'Excuse me. I don't appreciate being recorded" and V. Father replied, "I have nothing to say to you." M. Father's counsel stated that she believed no further conduct happened that could be complained about and that M. Father was admonished after the first incident.

The juvenile court then held that "based on [V. Father's] declaration in this case and hearing arguments of counsel, the court doesn't see that this rises to the level of a restraining order," noting that there were no other incidences besides the one described in the declaration. While it appeared that V. Father and M. Father did not get along, the juvenile court did not find any actual threats of harm. Nonetheless, the juvenile court stated that "I am going to order a stay-away" requiring V. Father and M. Father to stay 100 yards from each other and told them that a violation of the mutual stay-away order would be a violation of a court order and either father could be held in contempt.[3] V. Father and M. Father indicated that they understood.[4]

---

[2] M. Father's counsel also noted an issue with service of the TRO but waived any defect.

[3] At the hearing, the juvenile court made an exception for when the fathers attended court hearings and needed to be in the court, lobby, waiting area or outside the courthouse.

[4] The juvenile court also ordered V. Father and M. Father to have no contact with each other. On appeal, V. Father does not address or challenge the no contact provision of the juvenile court's order. Accordingly, we do not address the no contact provision.

That same day, September 3, 2013, V. Father filed an appeal.

## DISCUSSION

On appeal, V. Father argues that the juvenile court erred when it issued a mutual stay away order. Specifically, V. Father argues that the mutual stay away order is governed by section 213.5 of the Welfare and Institutions Code, which requires notice and a hearing to issue a non-temporary restraining order, but V. Father received no notice and "was not allowed to respond at all or present evidence or argument against any order enjoining him." V. Father also contends that there was no evidence against him to support the mutual stay away order, as M. Father's counsel did not present any evidence and instead purported to summarize her client's view of the events. Finally, V. Father argues that the juvenile court should have issued a restraining order against M. Father.

We reverse in part and affirm in part.

## I. Issuance of Mutual Stay Away Order

Preliminarily, we note that V. Father's assumption that the mutual stay away order is "governed by section 213.5" of the Welfare and Institutions Code appears to be incorrect. The juvenile court stated at the restraining order hearing that "based on [V. Father's] declaration in this case and hearing arguments of counsel, the court doesn't see that this rises to the level of an actual restraining order," noting that only one incident was reported and it did not involve an actual threat. Thus, the juvenile court declined to issue a restraining order under section 213.5.[5] The court nonetheless stated it would issue a mutual stay away order. Presumably it did so under its inherent powers. (See *In re M.B.* (2011) 201 Cal.App.4th 1057, 1064; quoting *In re Amber S.* (1993) 15 Cal.App.4th 1260, 1264 ["'All courts have inherent powers which enable them to carry out their duties and ensure the orderly administration of justice. The inherent powers of courts are derived from article VI, section 1 of the California Constitution and are not dependent on statute. [Citations.]'"].)

---

[5] As discussed in the next section, we find no error in this decision.

6

In exercising this inherent power, the juvenile court "must consider the primary objective of the proceeding, which is the promotion of the best interests of the child, but it must also weigh and protect the constitutional rights of the parents which necessarily are implicated." (*In re Amber S.*, *supra*, 151 Cal.App.4th at p. 1265.)  Here, we agree with V. Father that the juvenile court erred in issuing the mutual stay away order against V. Father given the lack of any evidence against V. Father.  The only evidence before the juvenile court was V. Father's own declaration.  Although counsel for M. Father provided a summary of her client's version of what happened on August 6, 2012, "[i]t is axiomatic that the unsworn statements of counsel are not evidence. [Citations.]" (*In re Zeth S.* (2003) 31 Cal.4th 396, 413–414, fn. 11.)

Accordingly we reverse the juvenile court's issuance of the mutual stay away order.[6]

## II.    Denial of Restraining Order Against M. Father

Next V. Father contends that the juvenile court erred in denying his request for a restraining order against M. Father.  We are not persuaded.

We review the juvenile court's decision to deny the restraining order for abuse of discretion.  (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 850.)  The order will not be disturbed if substantial evidence supports the denial.  (*In re B.S.* (2009) 172 Cal.App.4th 183, 193; *In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1512; *In re Cassandra B.* (2004) 125 Cal.App.4th 199, 210-211.)  We draw all reasonable inferences from the evidence to uphold the juvenile court's determination and adhere to the principle that issues of fact, weight, and credibility are the juvenile court's provinces.  (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393; *In re Shelley J.* (1998) 68 Cal.App.4th 322, 329.)  Even assuming opposite inferences might be equally reasonable, "we are not authorized to second-guess the juvenile court on this point." (*In re B.S.*, *supra*, 172 Cal.App.4th at p. 194.)

---

[6] Our conclusion makes it unnecessary to address V. Father's other contentions concerning the mutual stay away order.

Welfare and Institutions Code section 213.5 provides for the issuance of a restraining order by the dependency court.  A person need not have engaged in violent behavior to be subject to a restraining order.  (*In re Cassandra B.*, *supra*, 125 Cal.App.4th at p. 211.)

V. Father argues that the conduct during this incident was harassment under Code of Civil Procedure section 527.6, noting that "M. Father's conduct which was specifically directed at him seriously alarmed, annoyed and harassed him and served no legitimate purpose."  Section 527.6 defines harassment as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress . . . ."  (Code Civ. Proc., § 527.6, subd. (b)(3).)  Here, as the juvenile court noted, there was evidence of a single incident between V. Father and M. Father, occurring in the waiting room of the juvenile court, and no evidence of any threat of harm or violence. We find no abuse of discretion in the juvenile court's denial of the restraining order.

## DISPOSITION

The September 3, 2013 mutual stay away order is reversed.  The denial of the restraining order is affirmed.

NOT TO BE PUBLISHED.


CHANEY, J.

We concur:


ROTHSCHILD, P. J.


JOHNSON, J.