[No. A076432. First Dist., Div. Three. Feb. 18, 1998.]

In re DANIEL K, a Person Coming Under the Juvenile Court Law.
CITY AND COUNTY OF SAN FRANCISCO DEPARTMENT OF
HUMAN SERVICES, Plaintiff and Respondent; v.
MAUREEN K., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.A.

COUNSEL

Ozro William Childs, under appointment by the Court of Appeal, for Defendant and Appellant.

Louise H. Renne, City Attorney, and Ellen Forman, Deputy City Attorney, for Plaintiff and Respondent.

OPINION

**PARRILLI, J.**—Maureen K. (mother) appeals from a juvenile court order denying her Welfare and Institutions Code section 388[1] petition to modify a juvenile guardianship order pertaining to her son, Daniel K. She challenges this order on the ground the juvenile court failed to hold an evidentiary hearing on her modification petition. A juvenile court must hold a full hearing on a section 388 petition only if the petition establishes a prima facie case for modification. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309-310 [19 Cal.Rptr.2d 544, 851 P.2d 826].) Here, the petition failed to establish a prima facie case, and in the unpublished portion of this opinion, we affirm the order summarily denying the petition. In addition, mother contends the trial court erred when it denied her request for "continuing discovery." In the published portion of this opinion, we dismiss the purported appeal from this order on the ground it is untimely.

I

FACTS

The juvenile court first obtained dependency jurisdiction over eight-year-old Daniel on November 4, 1993, on the ground he was suffering severe emotional harm at the hands of his mother. (§ 300, subd. (c).)[2] During the next two years—before the juvenile court adopted a permanent plan of guardianship—Daniel exhibited severe emotional problems and mother showed an inability to deal with those problems. Although the juvenile court

---

[1]Subsequent statutory references are to the Welfare and Institutions Code, unless otherwise noted.

[2]This is the fourth in a series of appeals and writs involving Daniel's dependency. (See case Nos. A065667 & A064287 [nonpub. opn.], filed Feb. 23, 1995 [affirming jurisdictional and dispositional orders]; No. A071251 [nonpub. opn.] filed Oct. 31, 1995 [writ review upholding orders terminating reunification services and setting the matter for a section 366.26 hearing]; Nos. A070627 & A068481 [nonpub. opn.], filed June 5, 1997, rehg. granted June 26, 1997, opn. foll. rehg., filed. Aug. 15, 1997 [dismissing appeal from supplemental petition].)

initially placed Daniel in foster care, it later returned Daniel to mother's custody. While Daniel was in mother's custody, his emotional problems worsened. On June 1, 1994, Daniel was hospitalized for severe depression and out-of-control behavior. The hospital released Daniel to mother on June 24, 1994. On July 28, 1994, police responded to mother's call that Daniel was out of control. The police found Daniel locked in his room. They broke down the door and took him to an emergency facility. He was admitted to the McAuley Institute in San Francisco for psychiatric care.

Subsequently, Daniel lived at the Edgewood Children's Center, a residential treatment program, during the 1994-1995 school year, while he attended a private elementary school. Although mother was at first cooperative with the Edgewood staff, she later became hostile and disruptive. A psychiatrist who evaluated mother concluded that, while she admitted she could not manage Daniel's problems, she resented the involvement of professionals. Consequently, "she is obliged to challenge virtually all clinical efforts, even to denigrate the care-givers themselves, in order to restore her self-image as a 'good mother' and also to regain her sense of control." The psychiatrist recommended Daniel be sent far away from his mother's war with the clinical world so he could begin to lead a normal life, free of her direct influence. He recommended Daniel live with the Sheltons of Anchorage, Alaska. The Sheltons had provided day care to Daniel shortly after his birth, and Daniel considered them his "grandparents." Daniel had already lived in Alaska with the Sheltons for two lengthy periods, once while mother worked in Libya and once while she was getting settled in San Francisco.

Daniel moved into the Sheltons' Anchorage home in July of 1995. On November 20, 1995, the court held a section 366.26 permanency planning hearing and selected guardianship as the permanent plan. The court appointed the Sheltons as Daniel's legal guardians. According to a February 1996 progress report, Daniel was thriving in his placement with the Sheltons. He was doing well in his Anchorage school and had begun to build a trusting relationship with a therapist. Similarly, a six-month postpermanency planning review report, dated April 4, 1996, stated that Daniel was doing well in his placement with the Sheltons. The report noted Daniel's behavior had improved, he rarely had temper tantrums, and he had learned not to "act out physically." According to Daniel's teacher and school principal, he was not having academic or behavioral problems at school. The report recommended Daniel remain in long-term placement with the Sheltons. At the May 31, 1996, postpermanency planning review, the juvenile court found that returning Daniel to mother would create a substantial risk of detriment to the minor and continued the Sheltons' guardianship.

On July 15, 1996, mother filed an "Ex Parte Request for an Order to Provide Continuing Discovery." In a declaration attached to the request,

mother's counsel stated he had learned from the Alaska social worker who was monitoring Daniel's case that Daniel had been removed from the Sheltons' home on June 25, 1996, and had been placed in a "Level 1" residential care facility for at least 30 days. The social worker indicated she had recommended that Daniel be placed in a more restrictive "Level 4" facility. After receiving this information, mother's counsel was informed the Alaska authorities would not provide him with any additional information regarding Daniel's case. The juvenile court denied the motion for continuing discovery.

*The Modification Petition*

On October 15, 1996, mother filed a section 388 petition to modify the juvenile court order appointing the Sheltons as Daniel's guardians. The petition alleged that Daniel's behavior had continually deteriorated since he was placed with the Sheltons, and the State of Alaska had removed Daniel from the Sheltons' home because of their inability to control his erratic behavior. The petition stated Daniel was then currently on medication in a "Level 4 Therapeutic Treatment facility" in Anchorage, Alaska, which is the highest level of care for minors the State of Alaska allows. It further alleged that "[t]here is no immediate prognosis for the return of the minor to the guardians from the treatment provider." Mother asked the court to terminate the Sheltons' guardianship and to return him to San Francisco where he could be placed in a proper therapeutic treatment facility.

In its response, the San Francisco County Department of Human Services (Department) produced evidence that contradicted many of the allegations in mother's petition. In particular, the Department's evidence showed Daniel's behavior had not "continually deteriorated" since he had been living with the Sheltons; he had *not* been placed in the "the highest level of care for Minors" in Alaska, but was instead in a comprehensive residential treatment facility; and the prognosis for Daniel was that he would be returned to the Sheltons' home.

The juvenile court denied the modification petition without holding an evidentiary hearing. The court concluded there was no prima facie case for modification. The court specifically stated: "I am finding it would not be in the best interests of the child to pursue the proposed change of order."

This appeal followed. (§ 395.)

## II

### DISCUSSION

A. *The Court Was Not Required to Hold an Evidentiary Hearing on the Modification Petition.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B. *The Request for Continuing Discovery.*

■ After briefing was completed in this case, we directed counsel to address whether we must dismiss the appeal to the extent it seeks review of the order denying continuing discovery on the ground the appeal is untimely. Mother's counsel filed a letter brief in which he argued the discovery order was not separately appealable, and therefore should be reviewed in the appeal from the order denying the modification petition. At oral argument, counsel for the Department agreed the discovery order was not separately appealable, and therefore should be reviewed in the appeal from the order denying modification. We reject this concession. In our view, section 395 grants appellate jurisdiction to review an order denying continuing discovery rendered after "final judgment" in a section 300 proceeding. Because mother could have appealed that order, but did not, she has waived her right to attack it.

■ Preliminarily, we note the scope of a party's right to appeal is completely a creature of statute. (*Cobb* v. *University of So. California* (1995) 32 Cal.App.4th 798, 801 [38 Cal.Rptr.2d 543].) Thus, ". . . the California Legislature has *complete* control over the right to appeal, and can restrict, change, withhold or even abolish that right." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1997) ¶ 2:17, p. 2-12, italics in original, citing, inter alia, *In re Meranda P.* (1997) 56 Cal.App.4th 1143 [65 Cal.Rptr.2d 913].) Moreover, the parties cannot enlarge or restrict this court's appellate jurisdiction through their consent. (*Old Republic Ins. Co.* v. *St. Paul Fire & Marine Ins. Co.* (1996) 45 Cal.App.4th 631, 639 [53 Cal.Rptr.2d 50]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, ¶ 2:18, p. 2-12.)

■ Section 395 provides in pertinent part: "A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, *and any subsequent order may be appealed from as an order after*

---

*See footnote, *ante*, page 661.

*judgment . . . ."*[3] In a section 300 proceeding, the order entered at the dispositional hearing is a final judgment, and any order entered after the dispositional hearing (with one exception not pertinent here) is appealable as an order after judgment. (*In re Natasha A.* (1996) 42 Cal.App.4th 28, 34 [49 Cal.Rptr.2d 332]; *Wanda B.* v. *Superior Court* (1996) 41 Cal.App.4th 1391, 1395 [49 Cal.Rptr.2d 175]; *In re Sheila B.* (1993) 19 Cal.App.4th 187, 196 [23 Cal.Rptr.2d 482] ["[T]he dispositional order is the adjudication of dependency and is the first appealable order in the dependency process."].) The notice of appeal must be filed within 60 days after the juvenile court makes a final appealable order. (Cal. Rules of Court, rule 1435(f).)

Here, the juvenile court entered its dispositional order on February 15, 1994. The court made its order denying mother's motion for continuing discovery on July 31, 1996. Thus, that order was an order entered after judgment. Mother did not appeal from this order. Instead, mother filed a notice of appeal from the order denying her modification petition, on November 18, 1996, or more than three months after the court denied her discovery request. "An appeal from the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an appeal has passed." (*In re Edward H.* (1996) 43 Cal.App.4th 584, 590-591 [50 Cal.Rptr.2d 745]; see also *In re Meranda P.*, *supra*, 56 Cal.App.4th 1143, 1150-1157 [finding that "waiver rule" does not violate due process and explaining reasons underlying rule].) Here, the statutory time for filing an appeal from the order denying continuing discovery had passed. Thus, we must dismiss the appeal to the extent it purports to challenge the discovery order.

Citing *Lakin* v. *Watkins Associated Industries* (1993) 6 Cal.4th 644, 651 [25 Cal.Rptr.2d 109, 863 P.2d 179], mother contends not *all* postjudgment orders in section 300 proceedings are separately appealable, but only those

---

[3]The entire statute provides: "A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment; but no such order or judgment shall be stayed by the appeal, unless, pending the appeal, suitable provision is made for the maintenance, care, and custody of the person alleged or found to come within the provisions of Section 300, and unless the provision is approved by an order of the juvenile court. The appeal shall have precedence over all other cases in the court to which the appeal is taken. [¶] A judgment or subsequent order entered by a referee shall become appealable whenever proceedings pursuant to Section 252, 253, or 254 have become completed or, if proceedings pursuant to Section 252, 253, or 254 are not initiated, when the time for initiating the proceedings has expired. [¶] An appellant unable to afford counsel, shall be provided a free copy of the transcript in any appeal. [¶] The record shall be prepared and transmitted immediately after filing of the notice of appeal, without advance payment of fees. If the appellant is able to afford counsel, the county may seek reimbursement for the cost of the transcripts under subdivision (c) of Section 68511.3 of the Government Code as though the appellant had been granted permission to proceed in forma pauperis."

that either "affect the judgment or relate to it by enforcing it or staying its execution." This rule has been consistently applied to postjudgment appeals in general civil proceedings brought under Code of Civil Procedure section 904.1, subdivision (a)(2)[4] (formerly subdivision (b)).[5] ▮ However, "[t]he Juvenile Court Law . . . contains a specific provision for appeals . . . . Accordingly, under the rule that a special statute dealing expressly with a particular subject controls and takes priority over a general statute [citations], section [395], and not code of Civil Procedure section [904], is the one which must be looked to with respect to appeals under the Juvenile Court Law." (*In re Corey* (1964) 230 Cal.App.2d 813, 821 [41 Cal.Rptr. 379] [decided under former section 800, which applies to juvenile proceedings under sections 601 and 602, and rejecting claim similar to the one mother makes here]; see also *In re Eli F.* (1989) 212 Cal.App.3d 228, 233 [260 Cal.Rptr. 453].)

To our knowledge, no court has applied the limitation mother suggests here to appeals in a section 300 proceeding. To the contrary, the courts have stated: "Juvenile dependency law does not abide by the normal prohibition against interlocutory appeals. [Citation.] As previously noted, *all* postdispositional orders in juvenile dependency matters are directly appealable *without limitation*, except for post-1994 orders setting a section 366.26 hearing." (*In re Edward H., supra,* 43 Cal.App.4th 584, 590, italics added.) "The first appealable order in the dependency process is the dispositional order. [Citation.] The dispositional orders are the 'judgment' specified in section 395, and all subsequent orders, with the exception of those set out in section 366.25 and section 366.26 are appealable 'orders after judgment.' " (*In re Benjamin E.* (1996) 44 Cal.App.4th 71, 76 [51 Cal.Rptr.2d 584].) "In juvenile dependency matters, *all* orders starting chronologically with the dispositional order are, [with the exception of an order setting a section 366.26 hearing], appealable judgments." (*Wanda B.* v. *Superior Court, supra,* 41 Cal.App.4th at p. 1395, italics added.) "[A]n order entered after the dispositional hearing is appealable as an order after judgment." (*In re Natasha A., supra,* 42 Cal.App.4th at p. 34.). "[A]ll subsequent orders are directly appealable without limitation, except for post-1994 orders setting a .26 hearing when the circumstances specified in section 366.26, subdivision (*l*), exist." (*In re Meranda P., supra,* 56 Cal.App.4th at p. 1150.)

Mother has not cited, nor has our research revealed, a single juvenile case where the courts have applied the test mother proposes. To the contrary, the

---

[4]Code of Civil Procedure section 904.1 states in relevant part: "(a) An appeal may be taken from a superior court in the following cases: [¶] (1) From a judgment [with certain exceptions] . . . . [¶] (2) From an order made after a judgment made appealable by paragraph (1)."

[5]See *Lakin* v. *Watkins Associated Industries, supra,* 6 Cal.4th at page 651, footnote 2.

courts have concluded that a variety of postjudgment orders in section 300 proceedings are appealable, without considering whether those orders " 'affect the judgment or relate to it by enforcing it or staying its execution.' " (*Lakin* v. *Watkins Associated Industries, supra*, 6 Cal.4th 644, 651-652.) This is so even though it is debatable whether some of the postjudgment orders would have satisfied that test. (See, e.g., *John F.* v. *Superior Court* (1996) 43 Cal.App.4th 400, 405 [51 Cal.Rptr.2d 22] [postjudgment orders denying request for in-person visitation as part of reunification plan]; *In re Edward H., supra*, 43 Cal.App.4th at p. 590 [order selecting adoption as permanent plan but not terminating parental rights]; *In re Natasha A., supra*, 42 Cal.App.4th at pp. 33-34 [postjudgment orders granting or denying visitation].)

We have found only one possible limitation on the appellate court's power to review postjudgment orders in a section 300 proceeding. In *In re Corey, supra*, 230 Cal.App.2d 813, the court construed section 800, which establishes the scope of appeal in section 601 and 602 proceedings. (230 Cal.App.2d at pp. 820-821.) Section 800 is similar to section 395 in that it provides a judgment in a section 601 or 602 proceeding may be appealed from "in the same manner as any final judgment, *and any subsequent order may be appealed from . . . as . . . an order after judgment*." (§ 800, italics added; see *In re Corey, supra*, 230 Cal.App.2d at p. 820 for text of former version.) The *Corey* court held that ". . . the crucial language in section 800 is contained in the words 'subsequent order' and that it was the legislative intent to make appealable *any* order of a juvenile court after judgment *which affects the substantial rights of the juvenile . . . .*" (230 Cal.App.2d at p. 822, italics added; see also *In re Shannon W.* (1977) 69 Cal.App.3d 956, 960-961 [138 Cal.Rptr. 432]; *In re Sarah L.* (1974) 43 Cal.App.3d 88, 91-92 [117 Cal.Rptr. 390]; cf. Pen. Code, § 1237, subd. (b) [A criminal defendant may appeal "[f]rom any order made after judgment, affecting the substantial rights of the party."].)

In *In re Eli F., supra*, 212 Cal.App.3d 228, the Third District seized the language the *Corey* court had used in the section 601 context and applied it, without further analysis, to appeals brought under section 395 in section 300 proceedings. The court stated: "As a general rule, section 395 reflects a legislative intent to make appealable any order of a juvenile court after judgment which affects the substantial rights of the minor." (212 Cal.App.3d at p. 233.) We have not found any section 300 cases decided after *In re Eli F.* that cite that case for the proposition that a post judgment order must "affect the substantial rights" of the minor to be appealable. To the contrary, the cases have indicated that postjudgment orders are appealable "without limitation." (*In re Meranda P., supra*, 56 Cal.App.4th 1143, 1150.)

However, assuming, without deciding, that a postjudgment order in a dependency proceeding must "affect the substantial rights" of the minor to be appealable,[6] we believe the order denying the mother's motion for a continuing discovery order meets that test. The order sought "continuing" discovery of "the placement of the minor, his behavior as observed by school/Alaska/Guardian . . . , his therapist's observations and evaluations regarding his placement/behavior, [Department] notes and communications to anyone regarding the minor's placement and/or displacement from the Guardian . . . ." Thus, had the motion been granted, Daniel would have been required to permit his mother—who was arguably the cause of his emotional problems—to have unfettered access to information concerning the most intimate details of his life, including possibly privileged observations and evaluations by his therapist. Since appealable postjudgment orders include both those granting requested affirmative relief and those denying it, it follows that the order denying the request for continuing discovery affected the minor's substantial rights. (*Lakin* v. *Watkins Associated Industries, supra,* 6 Cal.4th at p. 653 & fn. 4; see also *People* v. *Michael W.* (1995) 32 Cal.App.4th 1111, 1116-1117 [38 Cal.Rptr.2d 556] [denial of a grounds pass appealable under Penal Code section 1237, subdivision (b), as an order affecting appellant's substantial rights]; *People* v. *Herrera* (1982) 127 Cal.App.3d 590, 597 [179 Cal.Rptr. 694], disapproved on another point in *People* v. *Martin* (1986) 42 Cal.3d 437, 451 [229 Cal.Rptr. 131, 722 P.2d 905].)

For her part, the Department's counsel cited *In re Jeanette H.* (1990) 225 Cal.App.3d 25 [275 Cal.Rptr. 9] at oral argument for the proposition that a discovery order may be reviewed by writ, which suggests the discovery order was not appealable. In *Jeannette H.*, however, the discovery order (requiring parties to submit witness lists) was issued before the dispositional hearing and the dispositional order. (*Id.,* at pp. 29-30.) Because the "first appealable order in the dependency process is the dispositional order" (*In re Benjamin E., supra,* 44 Cal.App.4th at p. 76) the challenge had to be by way of writ, since there was as of yet no appealable order. The same is not true here, where the court had long ago issued its dispositional order and the subsequent order denying continuing discovery was appealable as an order issued after judgment.

The Department's counsel also cited *Southern Pacific Co.* v. *Oppenheimer* (1960) 54 Cal.2d 784 [8 Cal.Rptr. 657, 356 P.2d 441] for the proposition that

---

[6]We note that, in criminal cases, Penal Code section 1237, subdivision (b) specifically provides that a defendant may appeal "[f]rom any order made after judgment, affecting the substantial rights of the party." Because the Legislature did not include a similar explicit limitation in section 395, it might be inferred that no such limitation was intended. However, as indicated, we need not decide that issue in this case because we conclude the order in this case did affect the substantial rights of the minor.

discovery orders in civil proceedings are *not* reviewable on a direct appeal, but are reviewed on appeal from the judgment finally entered in the action. This rule is based on the one final judgment rule. (*Id.*, at pp. 785-786.) The essence of the one final judgment rule is that an appeal lies only from a final judgment, not from an interlocutory order. A final judgment is one that " 'terminates the proceeding in the lower court by completely disposing of the matter in controversy.' " (*Kinoshita* v. *Horio* (1986) 186 Cal.App.3d 959, 963 [231 Cal.Rptr. 241].) However, as we have noted previously, "[j]uvenile dependency law does not abide by the normal prohibition against interlocutory appeals" and, consequently, "*all* postdispositional orders in juvenile dependency matters are directly appealable without limitation, except for post-1994 orders setting a section 366.26 hearing." (*In re Edward H., supra,* 43 Cal.App.4th at p. 590, italics added.)

Finally, mother contends the "public interest" favors making orders denying continuing discovery nonappealable in juvenile dependency cases because this procedure would serve judicial economy. We note first that the "public interest" is debatable on this point. Had mother appealed the order denying her request for continuing discovery, and had that appeal resulted in affirmance, it is possible mother would have abandoned her quest to modify the guardianship order. This would ultimately have saved judicial time and resources. In any event, ". . . these considerations are policy matters within the legislative, not the judicial, domain." (*In re Edward H., supra,* 43 Cal.App.4th at p. 591.)

### III

### DISPOSITION

The October 31, 1996, order denying mother's motion to modify the guardianship order (§ 388) is affirmed. The appeal is dismissed to the extent it purports to challenge the July 31, 1996, order denying mother's motion for continuing discovery.

Phelan, P. J., and Corrigan, J., concurred.

A petition for a rehearing was denied March 5, 1998. and appellant's petition for review by the Supreme Court was denied May 13, 1998.