Filed 12/6/19

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re J.A. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E072398 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J273242 & J273243) |
| v. | OPINION |
| J.A., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Steven A. Mapes, Judge. Dismissed.

The Blue Law Group and Michael K. Blue, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, and Jamila Bayati, Deputy County Counsel, for Plaintiff and Respondent.

1

Sixteen months after the jurisdiction and disposition hearing where the juvenile court placed J.A.'s (mother) twin children with their nonoffending, noncustodial father and dismissed the dependency with family law exit orders, mother attempts to challenge the court's findings and unwind the removal order. Relying on our decision in *In re A.O.* (2015) 242 Cal.App.4th 145 (*A.O.*), she argues we should excuse the lateness of her appeal because the juvenile court failed to advise her of her appellate rights at the close of the hearing, as required by California Rules of Court, rule 5.590(a).[1] We conclude *A.O.* and the line of cases preceding it are distinguishable and do not apply to this case. We will therefore dismiss the appeal as unjustifiably late.

# I

# FACTS

A. *Jurisdiction and Disposition*

The subjects of this now-closed dependency are an 11-year-old boy and his twin sister, who were nine years old in October 2017 when respondent San Bernardino County Children and Family Services (CFS) filed petitions on their behalf. The petitions alleged mother neglected and emotionally abused the boy, which also placed his sister at risk of harm. At the time, CFS had an open case with mother. They decided to file the petitions, however, after an incident where mother was driving with the twins, became upset with the boy, drove him to a nearby hospital, and tried to abandon him there. Mother walked into the hospital with the boy and told him to wait there, as she ran out. Hospital staff

---

[1] Unlabeled citations to rules refer to the California Rules of Court.

2

and security had to barricade her in the parking lot, reach through the window of her van, place it in park, and take the keys to stop her from leaving her son. According to hospital staff, mother said her son was "too much trouble, CPS should take him." To justify her actions, she told a CFS social worker that she couldn't handle her son's behavioral issues. She said he was a "habitual liar" and had been diagnosed with ADHD and Oppositional Defiant Disorder by Loma Linda University Medical Center. CFS later determined that he had never been diagnosed with those disorders. Mother also told CFS her son was "psychotic and should be placed in a mental institution."

Mother had been married to the twins' biological father from 2003 until they divorced in 2012. She lived in Ontario, California and father, who was in the Air Force, lived in Las Vegas, Nevada with his wife (stepmother), although at the time of the dependency he was deployed to South Korea.

In its jurisdiction/disposition report, CFS recommended the court sustain the twins' petitions, remove them from mother and place them with father, and dismiss the dependency with family law orders. CFS had experience with mother and the twins from before the abandonment incident and were concerned that mother exaggerated and exacerbated the boy's behavioral issues and promoted discord between the twins. According to the social worker with the most experience with the family, mother treated the boy with loathing and hostility, and constantly compared him to his father. The boy told CFS that mother hit him all the time and he was afraid of her. He had bruises but couldn't say how he had gotten them. An interventionist from South Coast Community

3

Services who had been providing intensive in-home services for the family reported that she was concerned about the twins' welfare in mother's care. She saw bruising on the boy in early October 2017 and he expressed being afraid of mother. At school, the boy displayed above-average cognitive abilities and his teacher had no concerns about his behavior. Her only concern was that he would often arrive to school tired, in dirty clothing. The girl told the social worker that her brother needed to live with father because "my mom wants to get rid of him."

About a week after CFS filed the petition, father emailed the social worker to ask that the twins be placed with him and stepmother. The social worker then spoke with stepmother, who said she loved the twins like her own and would be able to care for them.

The juvenile court held the jurisdiction and disposition hearing on November 20, 2017. Mother and her counsel were present. Father's counsel and stepmother were present, and father appeared telephonically from South Korea. Mother objected to the allegations in the petitions and to the content of CFS's reports, but opted not to testify. She argued the children were not safe with father and urged the court to let them stay with the maternal grandparents (where they had been placed since detention) so she could work on her issues and reunify with them. Counsel for father, the twins, and CFS all argued placement with father was in the twins' best interests.

4

The court sustained the allegations in the petitions, removed the twins from mother, and granted father sole legal and physical custody.[2] The court granted mother supervised visits every other weekend and twice weekly supervised telephone calls. The court indicated on the family law order that supervision was required for mother because she had not completed a parenting course, individual counseling, or child abuse prevention training. It then dismissed the dependencies and referred future proceedings to family court. At no point during the hearing did the court advise mother that she had the right to appeal the findings and orders it had made.

B.     *Post-dependency Matters and Mother's Appeal*

Mother hired an attorney to represent her in family court on custody issues. Nine months after the close of the dependency, in August 2018, her attorney successfully obtained the 2017 record from the juvenile court for purposes of mother's request for modification of custody and visitation orders in the family court. The docket in that case reflects that on October 31, 2018, the parties agreed to a stipulated order dismissing mother's custody and visitation request.[3]

---

[2] The petitions contained allegations that father was not providing support for the twins (Welf. & Inst. Code, § 300, subd. (g)), but the court struck them as unfounded at CFS's recommendation.

[3] We grant CFS's request to take judicial notice of the records from the family law case. (Evid. Code, § 452, subd. (d).)

5

On September 5, 2018, mother's attorney filed a Welfare and Institutions Code[4] section 388 petition in the juvenile court on her behalf, asking the court to "terminate the November 20, 2017 [dispositional] order and return custody to [mother], or permit a *bona fide* trial on the merits." The attorney argued the court had no authority to enter the dispositional order because it "lost jurisdiction at the end of the jurisdictional hearing." He argued it was in the twins' best interests to return to California and live with mother "who has a safe home, food, nearby relatives, and new coping skills."

On September 7, 2018, the juvenile court issued an order denying mother's petition. In a written ruling, the court stated it had read and considered the petition and supporting memorandum and "also re-read the entire court file including all reports." The court explained that its process in the dependency had been proper. "The court properly took jurisdiction. The court properly removed from mother. The court properly moved to dispo. The court properly placed with father as non-offending parent. The court properly determined that father did not need services. The court properly dismissed the case with a family law order." Mother did not appeal that order.

Over six months later, on March 21, 2019, mother's attorney filed a notice of appeal from the "November 20, 2017; Removal of Children." On April 4, 2019, we issued an order dismissing the appeal on the ground mother had far exceeded the 60-day deadline to challenge the November 2017 judgment. (Rule 8.406(a).) On April 19, 2019,

---

[4] Unlabeled statutory citations refer to this code.

mother's attorney moved to vacate the dismissal and attached a copy of the Reporter's Transcript from the November 20, 2017 jurisdiction and disposition hearing, which indicated the juvenile court did not advise mother of her appellate rights. Relying on our decision in *A.O.*, the attorney argued the juvenile court's failure constituted good cause to excuse the lateness of the appeal. On May 6, 2019, we reinstated the appeal.

## II

## ANALYSIS

Mother challenges the juvenile court's jurisdictional and dispositional findings for insufficient evidence. She argues the court erred in relying on the statements in CFS's reports because they were hearsay, consisting of "lay conclusory opinion" founded on "junk science." CFS argues the record contains ample support for the jurisdictional and dispositional findings, but also argues, as a threshold matter, that mother's appeal is untimely and the juvenile court's failure to advise her of her appellate rights 16 months earlier does not excuse the extreme delay in this case. We agree the appeal was filed well past the statutory deadline, and as a result, we lack jurisdiction to consider mother's belated challenge.

"The time for appealing a judgment is jurisdictional; once the deadline expires, the appellate court has no power to entertain the appeal." (*Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 56.) Here, mother had 60 days from the date of the judgment—November 20, 2017—to file a notice of appeal. (Rule 8.406(a).) "'The consequences of an untimely notice of appeal . . . are

7

not remediable. 'In the absence of statutory authorization, neither the trial nor appellate courts may extend or shorten the time for appeal [citation], even to relieve against mistake, inadvertence, accident, or misfortune.'" (*In re Z.S.* (2015) 235 Cal.App.4th 754, 768-769 [dismissing the father's appeal as untimely].) Because the time to challenge the November 2017 judgment expired long ago, we cannot hear the appeal.

Mother argues CFS forfeited any argument her appeal is late because they failed to file a motion for reconsideration of our order vacating our initial dismissal of this appeal. This is not the kind of argument that can be forfeited. "[T]he timely filing of an appropriate notice of appeal or its legal equivalent is an absolute prerequisite to the exercise of appellate jurisdiction." (*Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 670.) "'If it appears that the appeal was not taken within the 60-day period, the court has no discretion but must dismiss the appeal *of its own motion even if no objection is made*.'" (*In re Z.S.*, *supra*, 235 Cal.App.4th at p. 769, italics added.) In other words, even if CFS had not raised the timeliness issue, we would have found mother's appeal untimely on our own motion.

Next, mother's attorney asks us to excuse his delay in filing the notice of appeal because he is "primarily a civil and criminal trial attorney who didn't know the appeal advisement [rule] or that an appeal could be filed after the 60-day deadline had expired." He says that as soon as he researched the issue and discovered *A.O.*, he diligently filed the notice of appeal. He argues *A.O.* applies because, like in that case, the juvenile court

8

failed to advise mother of her appellate rights as required under rule 5.590(a).[5] Unfortunately for mother, the similarity with that case ends there.

In *A.O.*, the mother *timely appealed* from orders after the six- and 12-month review hearings, and it was within that timely appeal that she sought to belatedly challenge the dispositional order. Ordinarily, we would have concluded she was barred from challenging the dispositional order under the well-established rule that "'[a]n appeal from the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an appeal has passed.'" (*In re Daniel K.* (1998) 61 Cal.App.4th 661, 667.) However, because the juvenile court had failed to advise her of her appellate rights when it issued the dispositional order, we found good cause to treat her appeal of that order as an extraordinary writ petition, and we proceeded to consider that challenge along with her other timely challenges. In reaching this conclusion, we relied on the reasoning from cases like *In re Cathina W.* (1998) 68 Cal.App.4th 716, which held that a juvenile court's failure to advise a parent of their writ rights (as required by rule 5.590(b)) constitutes "good cause" for the parent's failure to timely file a writ petition challenging an order setting a section 366.26 hearing. (See *Adoption of Alexander S.* (1988) 44 Cal.3d 857, 865 [only in very rare and "'special circumstances constituting an excuse for failure to [timely appeal]'" may an appellate court grant review

---

[5] Rule 5.590(a) provides in relevant part that "after making its disposition order" on a section 300 petition, the court "must advise, orally or in writing, . . . if present, the parent" of "[t]he right . . . to appeal from the court order."

9

of an appealable order by way of extraordinary writ after the deadline to appeal has passed].)

*A.O.* and it predecessors are readily distinguishable from this case in that the dependencies were *still open* when we allowed the parents to bring their belated challenges to previous orders. For example, in *A.O.*, although the mother had missed the appellate deadline for that order, she filed a timely notice of appeal at her *next earliest opportunity*—from the orders issued at the six- and 12-month review hearing. By contrast, in our case, mother did not file her notice of appeal until a year and a half after her case was terminated and transferred to family court. Also unlike *A.O.* and its predecessors, mother has not shown diligence. Her attorney's inexperience with dependency law does not explain why he and mother waited so long to file a section 388 petition, failed to appeal the ruling on that petition, and then waited over six more months to file the notice of appeal from the 2017 judgment.

While we do not discount the critical importance of providing parents with writ and appeal advisements (which, unfortunately the trial court failed to do here), there is simply no authority for the proposition that a parent may reopen a long closed dependency to relitigate issues of jurisdiction and disposition based on a violation of rule 5.590. The purpose of appeal deadlines is to promote the finality of judicial decisions and provide security to the litigating parties. Nowhere is this purpose more crucial than in dependency cases, where the paramount consideration is child welfare. (See *In re Marilyn H.* (1993) 5 Cal.4th 295, 308 [observing that the Legislature designed the

10

dependency scheme to serve a minor's needs for "prompt resolution of his or her custody status" and a "stable environment[]"].)  The twins have been in their current placement for almost two years now, and by all accounts (except mother's), it is a stable and loving home environment.  Mother's recourse, if any, is in family court.

## III

## DISPOSITION

We dismiss the appeal.

CERTIFIED FOR PUBLICATION


SLOUGH                          
J.

We concur:


McKINSTER              
Acting P. J.


MILLER                    
J.

11