Filed 8/10/23; certified for publication 9/5/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re N.F., a Person Coming Under the Juvenile Court Law. | B318674 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 18CCJP03317B |
| Plaintiff and Respondent, | |
| v. | |
| Linda P., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nichelle L. Blackwell, Juvenile Court Referee. Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

Mother appeals from the juvenile court's order denying her post-permanency Welfare and Institutions Code[1] section 388 petition that asked the court to grant her reunification services with her thirteen-year-old son N.F. The juvenile court had terminated its dependency jurisdiction over N.F. in January 2021 after appointing paternal uncle as his legal guardian. Mother does not contest the merits of the court's denial of her section 388 petition. Rather, she argues the juvenile court's legal guardianship order must be reversed because the court and the Los Angeles County Department of Children and Family Services (Department) did not comply with their initial inquiry duties under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law.[2] We affirm.

## BACKGROUND

On May 24, 2018, the Department filed a section 300 petition alleging N.F. (born April 2008) and two of his half-siblings—who are not the subjects of this appeal—were at substantial risk of harm due in part to mother's substance abuse issues. The petition included an ICWA-010(A) Indian Child Inquiry Attachment form stating mother had denied Native American ancestry in a face-to-face interview.

Mother was present at the May 25, 2018 detention hearing. The court went "through a series of documents" with her to

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

[2]     Because ICWA uses the term "Indian," we do the same for consistency, although we recognize other terms are preferred. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

confirm the information mother had provided, including a "Parental Notification of Indian Status" form.[3] The court confirmed with mother that, as she had indicated by the box she checked on the form, she did not have any Indian ancestry as far as she knew. The court then asked mother, "Do you know if the fathers of the children have any Native American Indian ancestry?" She said, "No." The court also confirmed N.F.'s father was deceased.[4] The court thus found it had no reason to know N.F. or his half-siblings were Indian children, and ICWA therefore did not apply. According to the Department's November 14, 2019 section 366.26 report, the court's order as to N.F. specifically stated: " 'The Court does not have a reason to know that this is an Indian Child, as defined under ICWA, and does not order notice to any tribe or the BIA. Parents are to keep the Department, their Attorney and the Court aware of any new information relating to possible ICWA status. ICWA[-]20, the Parental Notification of Indian Status is signed and filed.' "[5]

On July 31, 2018, the court sustained the petition, amended by interlineation, removed N.F. from mother's custody, and granted mother reunification services. Mother failed to reunify with N.F. The court terminated her reunification

---

[3]     This form, known as an ICWA-020 form, is not part of the record.

[4]     The Department obtained N.F.'s father's death certificate—he died in July 2011. He and mother were married.

[5]     The record does not include the court's May 25, 2018 minute order.

3

services in July 2019 and set a section 366.26 hearing to determine N.F.'s permanent plan.

Between late 2019 and early 2021, the Department reported on N.F.'s adoptability and the family's circumstances. Mother was serving a prison sentence in Arizona after being convicted of possession of methamphetamine with intent to distribute. She had not seen N.F. since August 2018 but had some monitored phone calls with him. N.F. had been living with paternal uncle in Texas since June 2019. Paternal uncle was committed to providing N.F. with a stable home through legal guardianship, rather than adoption. The Department's final section 366.26 report and December 24, 2020 status review report stated ICWA did not apply and noted the juvenile court's detention finding that it had no reason to know N.F. was an Indian child.

On January 14, 2021, the court held the section 366.26 hearing. The court selected legal guardianship as N.F.'s permanent plan, appointed paternal uncle as N.F.'s legal guardian, granted mother monitored visitation, and terminated dependency jurisdiction over N.F. with Kinship Guardianship Assistance Payment (Kin-GAP) funding in place.[6] Mother did

---

[6] "The Kin-GAP program is a state program that provides ongoing funding for children who exit the dependency system to live with relative legal guardians. In order to receive funding under the program the county welfare agency must enter into a written binding agreement with the relative guardian and dependency jurisdiction must be terminated. (§§ 11386, 11387.)" (*In re Priscilla D.* (2015) 234 Cal.App.4th 1207, 1211 & fn. 2.) The court here terminated its dependency jurisdiction. (*Id.* at

not appeal from the juvenile court's orders or findings made at the section 366.26 hearing.

Almost a year later, on January 10, 2022, mother filed a section 388 petition in propria persona asking the juvenile court to reinstate reunification services and give her the "cha[nc]e to live together [with N.F.]." The court set a hearing on mother's petition for February 24, 2022.

In its report responding to mother's petition, filed February 17, 2022, the Department stated it had been unable to contact mother. The social worker had tried to locate mother at the address she gave on her petition, had left voicemail and text messages at the phone number mother provided asking mother to call back, and had sent messages through social media platforms asking for a return call. The social worker spoke to maternal grandfather at the address mother had provided. He said mother had moved out three to four months earlier. He didn't know her current home address or contact number. He agreed to give mother the social worker's information if he had any contact with mother.

N.F. told the social worker he wanted to continue living with his paternal uncle. He wanted to have calls and visits with mother but did not want to live with her. He didn't know where she was living. The Department recommended the court deny mother's section 388 petition.

p. 1216; § 366.3, subd. (a)(3).) The court nevertheless retained jurisdiction "over the guardianship."

The Department's response included the court's earlier finding in May 2018 that it had no reason to know N.F. was an Indian child.

At the February 24, 2022 hearing, the court re-appointed counsel for mother and N.F.  Counsel, mother (assisted by a Spanish language interpreter), N.F., and paternal uncle appeared remotely by WebEx.  Mother's counsel asked the court to reinstate mother's reunification services due to her changed circumstances—she had completed programs in her place of incarceration and had been released on December 8, 2021—and argued doing so was in N.F.'s best interests.  She alternatively asked for a continuance so the social worker could interview mother.  The court denied mother's request for a continuance and denied the petition.[7]  The court ordered:  "[N.F.] will continue to reside with his paternal uncle under that legal guardianship, and the case remains closed through the Kin-GAP matter that I have already closed last year."

## DISCUSSION

### 1.  *Applicable law and standard of review*

"To implement ICWA, the county welfare department and the juvenile court must determine whether a case involves an Indian child."  (*In re Robert F.* (2023) 90 Cal.App.5th 492, 499 (*Robert F.*), review granted July 26, 2023, S279743.)  California law thus imposes on the juvenile court and the Department

---

[7]     Mother does not raise any claim of error with respect to the court's denial of her continuance request.  She thus has forfeited the issue.  (*Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 653 ["An appellant abandons an issue by failing to raise it in the opening brief."].)

"an affirmative and continuing duty to inquire whether a child for whom" a section 300 petition "may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a); *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 998 (*Ezequiel G.*).) An " 'Indian child' " is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a) [adopting federal definition].)

" 'The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry.' . . . [¶] 'The duty of initial inquiry applies in every dependency proceeding.' " (*Robert F., supra*, 90 Cal.App.5th at p. 499.) The Department's "duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) "In addition, '[f]ederal regulations require state courts to ask each participant "at the commencement" of a child custody proceeding "whether the participant knows or has reason to know that the child is an Indian child." (25 C.F.R. § 23.107(a) (2022).)' " (*Robert F.*, at pp. 499–500; *In re Benjamin M., supra*, 70 Cal.App.5th at p. 741.) State law, in turn, requires the juvenile court, at a party's first appearance, to ask "each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child" (§ 224.2, subd. (c)) and require each party to complete an ICWA-020 form (Cal. Rules of Court, rule 5.481(a)(2)(C)).[8] "The parties are instructed to

---

[8] Rules references are to the California Rules of Court.

7

inform the court 'if they subsequently receive information that provides reason to know the child is an Indian child.' (25 C.F.R. § 23.107(a) (2020); § 224.2, subd. (c).)" (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

And, if the Department takes a child into its temporary custody under section 306, it "has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b); but see *Robert F., supra*, 90 Cal.App.5th at pp. 497–498 [county welfare department that took child into protective custody "pursuant to a warrant," rather than under section 306, "had no obligation" to ask extended family members about child's Indian status under section 224.2, subd. (b) (review granted on this issue, see S279743 and *In re Ja.O.*, review granted July 26, 2023, S280572)].)[9]

If the initial inquiry gives the juvenile court or Department a "reason to believe that an Indian child is involved," then their duty to "make further inquiry regarding the possible Indian status of the child" is triggered. (§ 224.2, subd. (e); *Ezequiel G., supra*, 81 Cal.App.5th at p. 999.) Once there is a "reason to

---

[9] Extended family members include adults who are the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [adopting federal definition].) The record does not indicate whether the Department took N.F. into protective custody under section 306.

8

know" an Indian child is involved, formal notice under ICWA must be given to the child's "parents or legal guardian, Indian custodian, if any, and the child's tribe." (§ 224.3, subd. (a); rule 5.481(c)(1); 25 U.S.C. § 1912(a).)

The juvenile court may find ICWA does not apply to a child's proceeding if it finds the Department's duty of inquiry has been satisfied and there is no reason to know that child is an Indian child. (§ 224.2, subd. (i)(2); rule 5.481(b)(3)(A).) The juvenile court's finding that ICWA does not apply thus " ' "implies that . . . social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry." ' " (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)

We generally review the juvenile court's ICWA findings for substantial evidence, " 'which requires us to determine if reasonable, credible evidence of solid value supports' the court's ICWA finding." (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 777, review granted Sept. 21, 2022, S275578; see also *Ezequiel G., supra*, 81 Cal.App.5th at pp. 1004–1005 [reviewing juvenile court's finding that it had no reason to know a child is an Indian child for substantial evidence, but reviewing decision that ICWA inquiry was adequate for abuse of discretion].)

**2.** ***Mother's claim of error fails***

Mother appeals from the juvenile court's order and findings made at the hearing on her post-permanency section 388 petition. She nevertheless asks us to reverse the court's *legal guardianship order* on the ground the court and the Department failed to comply with their initial and continuing duty of inquiry under section 224.2 when the Department did not ask paternal uncle or maternal grandfather about N.F.'s Indian status. The

Department argues mother forfeited her challenge to the legal guardianship order by not appealing from it, and it no longer had an ICWA duty of inquiry at the post-permanency proceeding. Mother did not file a reply brief to respond to these arguments. We agree with the Department.

As the Department notes, the juvenile court did not order a legal guardianship at the section 388 hearing from which mother appeals. The court selected legal guardianship as N.F.'s permanent plan, and appointed paternal uncle as N.F.'s legal guardian, at the section 366.26 hearing held a year earlier on January 14, 2021.

Mother had the right to appeal from the court's legal guardianship order, including the court's implicit finding it continued to have no reason to know N.F. was an Indian child and the Department had satisfied its duty of ICWA inquiry. (See *In re Isaiah W.* (2016) 1 Cal.5th 1, 10 [parent could raise ICWA error for first time from order terminating parental rights made at section 366.26 hearing because order was "necessarily premised on a *current* finding by the juvenile court that it had no reason to know [the child] was an Indian child"]; *In re Josiah T.*, *supra*, 71 Cal.App.5th at p. 401 [juvenile court's finding that ICWA does not apply " ' "implies that . . . social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry" ' "].) There is no record mother ever appealed from the court's January 14, 2021 legal guardianship order, however. The time to do so expired many months ago. (See § 395, subd. (a)(1); rules 5.585, 8.406(a)(1).)

Mother cannot now use her appeal from her *post-permanency* section 388 petition to challenge the legal guardianship order and findings made at the section 366.26 hearing—including the finding that ICWA did not apply. (*In re Daniel K.* (1998) 61 Cal.App.4th 661, 667 [" 'An appeal from the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an appeal has passed.' "].) By failing to file a timely appeal from the court's legal guardianship order—entered at the time the court terminated its dependency jurisdiction—mother has forfeited her right to challenge the court's implied ICWA finding made as part of that order.

As for mother's appeal from the court's denial of her section 388 petition on the ground the Department's initial ICWA inquiry was inadequate, mother has failed to demonstrate error. When the juvenile court establishes a legal guardianship for a dependent child, the court "may continue jurisdiction over the child as a dependent child of the juvenile court or may terminate its dependency jurisdiction and retain jurisdiction over the child as a ward of the legal guardianship." (§ 366.3, subd. (a)(3).) Here, the juvenile court terminated its *dependency* jurisdiction over N.F.—as required for his guardian to receive Kin-GAP funding—and merely retained jurisdiction over the guardianship. (§§ 11361 [recognizing relative Kin-GAP legal guardianship is "the permanent plan" for the dependent child allowing for dependency to be dismissed as "there is no need for continued governmental intervention in the family life through ongoing, scheduled court and social services supervision of the placement"], 11386 [eligibility for Kin-GAP funding requires dependency jurisdiction to have been terminated].)

11

Accordingly, as the juvenile court did not vacate its order terminating its dependency jurisdiction over N.F.[10] when it heard mother's section 388 petition—and a section 300 petition was not being filed on N.F.'s behalf—the court's and the Department's continuing duty of inquiry under section 224.2 was not implicated. The situation is thus distinguishable from that in *Isaiah W.* There, the parent failed to appeal from a dispositional order that included the juvenile court's finding that ICWA was inapplicable. (*In re Isaiah W., supra*, 1 Cal.5th at p. 10.) Our high court held that, although the parent could not challenge that order through her appeal from the court's order terminating her parental rights, because the juvenile court "had a *continuing* duty to inquire whether [the child] was an Indian child in all dependency proceedings, including a proceeding to terminate parental rights," the parent could challenge "the juvenile court's finding of ICWA's inapplicability underlying" the order terminating parental rights. (*Ibid.*) Thus, the parent's "inaction in the face of the earlier order d[id] not preclude" the parent from claiming in her current appeal that the court erred in finding ICWA notice unnecessary. (*Ibid.*)

That reasoning does not apply to the court's order denying mother's section 388 petition here for the simple reason that the hearing was not a *dependency* proceeding as N.F. no longer was a dependent of the juvenile court. Indeed, when the court denied mother's request for reunification services, it specifically stated,

_____

[10] A court that has dismissed its dependency jurisdiction following the establishment of a legal guardianship may vacate its order dismissing its dependency jurisdiction. (§ 366.3, subd. (b)(1); *In re Priscilla D., supra*, 234 Cal.App.4th at p. 1216.)

"[T]he case remains *closed* through the Kin-GAP matter that I have already closed last year." (Italics added.) Unlike in *Isaiah W.*, therefore, there is no basis for us to infer the court made a current no-ICWA finding when it denied mother's section 388 petition. Nor does the record indicate mother asked the juvenile court to reopen the dependency case based on new information relating to N.F.'s possible Indian status. (See § 224.2, subd. (i)(2) [juvenile court must reverse its finding ICWA does not apply "if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker . . . to conduct further inquiry pursuant to Section 224.3"].)

Moreover, as the Department asserts, ICWA did not apply to the post-permanency hearing on mother's section 388 petition because it was not an Indian child custody proceeding. (§ 224.1, subd. (d)(1) [defining " 'Indian child custody proceeding' " as "a hearing during a juvenile court proceeding . . . that may culminate in" foster care placement—including guardianship placement—termination of parental rights, preadoptive placement, or adoptive placement]; see also 25 U.S.C. § 1903(1).) ICWA notice must "be provided for hearings that may culminate in an order for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement." (§ 224.3, subd. (a).) The section 366.26 hearing at which the court selected legal guardianship as N.F.'s permanent plan was an Indian child custody proceeding; the post-permanency section 388 hearing was not. None of the above outcomes was possible at that hearing—mother was seeking to reunify with N.F. and for his ultimate return to her care. (See *In re A.T.* (2021) 63 Cal.App.5th 267, 274 [ICWA not implicated in a proceeding when dependent

13

child is placed with a parent].) ICWA thus did not apply. (25 U.S.C. § 1911(c) ["In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding."].)

Accordingly, as mother has failed to show ICWA or related state law applied to the hearing on her post-permanency section 388 petition, we find no error.

## DISPOSITION

We affirm the juvenile court's February 24, 2022 order denying mother's section 388 petition.



                                        EGERTON, J.

I concur:



        EDMON, P. J.


14

LAVIN, J., Concurring:

I concur in the judgment. I write separately to clarify that I disagree with the harmless error analysis in *In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted September 21, 2022, S275578, and in the majority opinion in *In re Ezequiel G.* (2022) 81 Cal.App.5th 984.


LAVIN, J.

Filed 9/5/23

## CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re N.F., a Person Coming Under the Juvenile Court Law. | B318674 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> Linda P., <br><br> Defendant and Appellant. | Los Angeles County Super. Ct. No. 18CCJP03317B <br><br> ORDER CERTIFYING FOR PUBLICATION [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter, filed on August 10, 2023, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports.

There is no change in the judgment.

_____

EGERTON, J.                              LAVIN, J., Acting P.J.