Filed 9/11/25  In re V.B. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re V.B, a Person Coming Under the Juvenile Court Law. | B343351 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK97904C) |
| Plaintiff and Respondent, | |
| v. | |
| MICHELLE R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robin R. Kesler, Referee.  Affirmed.

Jesse Frederic Rodriguez and Giselle Marie Achecar, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Courtney Fisher, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

V.B. (born in September 2010) was placed in a permanent plan of legal guardianship in 2016 after her parents, Michelle W. (mother) and L.D. (father) failed to reunify. More than eight years later, in 2024, mother filed a Welfare and Institutions Code[1] section 388 petition seeking to terminate the legal guardianship and reinstate mother's reunification services and unmonitored visitation. The juvenile court denied mother's petition without a hearing, and mother appealed.

Mother's sole contention on appeal is that the order of legal guardianship should be conditionally reversed because the juvenile court and the Los Angeles County Department of Children and Family Services (DCFS) did not conduct an adequate inquiry into V.B.'s possible Indian ancestry as required by the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California law. As we discuss, mother cannot collaterally attack the order of legal guardianship through this appeal from an order entered eight years later. We therefore affirm the order denying mother's section 388 petition.

---

[1]     Unless otherwise indicated, all subsequent statutory references are to the Welfare and Institutions Code.

# FACTUAL AND PROCEDURAL BACKGROUND

## I.    The dependency case.

In 2013, two-year-old V.B. was living with mother and her half-sisters, D.W. (age 12) and E.R. (age 9).[2]  In February 2013, DCFS filed a petition alleging that the children were within the juvenile court's jurisdiction pursuant to section 300, subdivisions (a), (b), and (j) because mother physically abused E.R. by striking her with a belt; drove while under the influence of alcohol with V.B. in the vehicle; left D.W. and E.R. home without adult supervision for more than 13 hours; maintained a filthy, hazardous, and roach-infested home; and abused alcohol.  DCFS subsequently added allegations that mother abused cocaine and engaged in domestic violence with her boyfriend in the children's presence.  On February 21, 2013, the children were detained and placed in foster care.

In February 2013, mother filed an ICWA-020 form denying that she had Indian ancestry.  The court found no reason to know the children were Indian children.

At father's first appearance in March 2013, father filed an ICWA-020 form stating that he may have Cherokee ancestry. That day, the juvenile court ordered DCFS to interview father and paternal grandmother regarding the family's possible Indian ancestry.  DCFS interviewed father, who said he intended to raise his daughter in the Muslim faith and did not "want her to have anything to do with [ICWA]."  Father did not provide DCFS with contact information for any paternal relatives.  On March 29, 2013, the juvenile court found: "Based on interview of father, there is no information that any of 4 generations are registered

---

[2]    Only V.B. is a subject of this appeal.

with a tribe. . . . Previous finding remains that Indian Child Welfare Act does not apply."

In October 2013, after a contested adjudication hearing, the juvenile court sustained the allegations of the petition, declared the children juvenile court dependents, and granted the parents reunification services.

Mother received family reunification services for more than two years. In March 2015, after a two-day contested hearing, the juvenile court found the children could not safely be returned to mother and there was no substantial probability they would be returned within six months. The court therefore terminated mother's reunification services and set a permanent placement hearing for July 2015.

## II.   The legal guardianship.

In March 2015, DCFS advised the court that due to mother and maternal grandmother "causing disruptions," V.B.'s caregiver of two years had "decided not to proceed any further as the caregiver or prospective adoptive parent for [V.B.], as she felt intimidated by the family's response when reunification was unsuccessful[.]" V.B. was removed from her caregiver and re-placed several times.

In April 2016, V.B. was placed with her siblings in the home of LaTanya G. LaTanya subsequently agreed to become V.B.'s legal guardian.

At a section 366.26 hearing on November 29, 2016, the juvenile court appointed LaTanya as V.B.'s legal guardian. V.B. has remained in a legal guardianship with LaTanya throughout these proceedings.

### III. Mother's section 388 petitions and DCFS's further ICWA inquiry.

Between November 2015 and December 2023, mother filed 13 petitions pursuant to section 388 seeking, among other things, reinstatement of her reunification services, unmonitored visits, overnight visits, conjoint counseling, termination of the guardianship, and custody of V.B. Mother was briefly granted unmonitored visits, but her petitions otherwise were denied.

In August 2022—nearly a decade after these proceedings began—mother stated at a hearing that her family had Blackfoot Indian heritage. The juvenile court ordered DCFS to "conduct [an] ICWA investigation [if] not done already regarding [the] Blackfeet tribe." A social worker interviewed the maternal grandmother, who said that the maternal great grandmother, Emma Collins, was " 'full Blackfoot Native American.' " Maternal grandmother said she had no further information, but suggested that the social worker speak to maternal great-great-aunt Maxine. The social worker spoke to Maxine, who was not aware that the family had any Indian ancestry.

In February 2023, the juvenile court found that DCFS had completed its ICWA investigation and ICWA notices were not required.

In March 2024, mother said her grandmother, Edith Simmons, and her great grandmother, Emma Collins, were Blackfeet Indians, but she did not know if either was registered with a tribe. Maternal grandmother said she was not aware of any documented Indian ancestry.

## IV. The present section 388 petition.

On December 20, 2024, mother filed another section 388 petition seeking reunification services, unmonitored visits, educational rights, and termination of the legal guardianship. In support, mother attached a variety of exhibits, including a lease, college transcript, employment verification, various certificates of completion, and letters of support. Mother's petition did not address the court's ICWA inquiry.

The juvenile court denied the petition without a hearing on December 26, 2024, noting that mother had not demonstrated that the requested change of court order was in V.B.'s best interests. Mother timely appealed from the December 26, 2024 order.

## DISCUSSION

On appeal, mother does not contend that the juvenile court abused its discretion by finding that the requested change of order was not in V.B.'s best interests. Instead, mother's sole contention is that the 2016 guardianship order should be conditionally reversed because the juvenile court and DCFS failed to comply with ICWA and related state law.

DCFS argues mother has not provided an adequate appellate record to allow review of her claim and, in any event, mother forfeited any objection to the legal guardianship order made more than eight years ago. We agree.

"The appellant bears the burden of providing an adequate record affirmatively demonstrating error, and when an appellant fails to supply a record adequate to review a claim, the claim fails." (*People v. Benson* (2025) 110 Cal.App.5th 1068, 1084; see also *In re Angel L.* (2008) 159 Cal.App.4th 1127, 1137

6

["The appellant has the burden of establishing error and, lacking an adequate record, a reviewing court will presume the evidence supports the judgment"].)

Here, the record does not contain the reporter's transcripts of any of the juvenile court hearings, including the hearings at which the juvenile court made ICWA findings. Without the reporter's transcripts, we cannot determine whether the parties provided the court with any additional information about the parents' claimed Indian ancestry or DCFS's ICWA inquiry. It is mother's responsibility to provide a record that is adequate for review of her claims; because she has not done so, we cannot evaluate her claims of ICWA error. (See *In re L.B.* (2003) 110 Cal.App.4th 1420, 1424 [where appellant failed to designate a reporter's transcript, the record was not sufficient to allow the court to evaluate claim of ICWA error].)

In any event, even were the record sufficient, we still would not be able to grant mother the relief she seeks. Mother's appeal is from the juvenile court's order and findings made at the hearing on her post-permanency section 388 petition. She nevertheless asks us to conditionally reverse the court's *legal guardianship order* on the ground that the court and DCFS failed to comply with their duties of inquiry and notice under section 224.2. But the juvenile court did not order a legal guardianship in the section 388 order from which mother appeals. Instead, the legal guardianship was selected as V.B.'s permanent plan more than eight years earlier, in November 2016.

Mother had the right to appeal from the court's legal guardianship order, and in doing so to raise any alleged error in the juvenile court's implicit finding that it had no reason to know

V.B. was an Indian child and the Department had satisfied its duty of ICWA inquiry. (See *In re Isaiah W.* (2016) 1 Cal.5th 1, 10 [parent could raise ICWA error for first time from order terminating parental rights because order was "necessarily premised on a *current* finding by the juvenile court that it had no reason to know [the child] was an Indian child]; *In re Josiah T.* (2021) 71 Cal.App.5th 388, 401 [juvenile court's finding that ICWA does not apply " ' "implies that . . . social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry" ' "].) But the time to appeal from that order expired many years ago. (See § 395, subd. (a)(1); Cal. Rules of Court, rule 8.406(a)(1).)

As we recently explained, a parent "cannot . . . use her appeal from her *post-permanency* section 388 petition to challenge the legal guardianship order and findings made at the section 366.26 hearing—including the finding that ICWA did not apply. (*In re Daniel K.* (1998) 61 Cal.App.4th 661, 667 [' "An appeal from the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an appeal has passed" '].)" (*In re N.F.* (2023) 95 Cal.App.5th 170, 179.) Accordingly, by failing to timely appeal from the court's legal guardianship order, mother forfeited her right to challenge the court's implied ICWA finding made as part of that order.[3]

---

[3] Mother does not contend that the juvenile court was required to make an ICWA finding when it entered the order denying her section 388 petition. We therefore do not reach that issue.

8

## DISPOSITION

The order denying appellant mother's section 388 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


We concur:


EGERTON, J.


ADAMS, J.

9